# GERSTEIN *v.* PUGH ET AL.

No. 73–477.   Argued March 25, 1974—Reargued October 21, 1974—
Decided February 18, 1975

*Leonard R. Mellon* reargued the cause for petitioner. With him on the brief was *N. Joseph Durant, Jr.*

*Bruce S. Rogow* reargued the cause for respondents. With him on the briefs was *Phillip A. Hubbart.*

*Paul L. Friedman* reargued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Bork, Assistant Attorney General Petersen,* and *Deputy Solicitor General Frey. Raymond L. Marky,* Assistant Attorney General, reargued the cause for the State of Florida as *amicus curiae* urging reversal. With him on the brief were *Robert L. Shevin,* Attorney General, and *George R. Georgieff,* Assistant Attorney General.[*]

---

[*]Briefs of *amici curiae* urging reversal were filed by *Arthur K. Bolton,* Attorney General, *Robert S. Stubbs II,* Executive Assistant Attorney General, *Richard L. Chambers,* Assistant Attorney General, and *John W. Dunsmore, Jr.,* Deputy Assistant Attorney General, for the State of Georgia; by *William J. Guste, Jr.,* Attorney General, and *Walter L. Smith, Jr.,* Assistant Attorney General, for the State of Louisiana; by *Robert H. Quinn,* Attorney General, *John J. Irwin, Jr., David A. Mills,* and *Barbara A. H. Smith,* Assistant Attorneys General, and *Michael C. Donahue,* Deputy Assistant Attorney General, for the Commonwealth of Massachusetts; by *John L. Hill,* Attorney General, *Larry F. York,* First Assistant Attorney General, *Joe B. Dibrell* and *Max P. Flusche, Jr.,* Assistant Attorneys General, and *Larry Gist* for the State of Texas; by *Vernon B. Romney,* Attorney General, and *M. Reid Russell,* Chief Assistant Attorney General, for the State of Utah; and by *Slade Gorton,* Attorney General, *Malachy R. Murphy,* Deputy Attorney General, and *Kevin M. Ryan,* Assistant Attorney General, for the State of Washington.

Briefs of *amici curiae* urging affirmance were filed by *Daniel S. Pearson* and *Louis M. Jepeway, Jr.,* for the Dade County Bar Assn., and by *Malvine Nathanson* for the National Legal Aid and Defender Assn.

Briefs of *amici curiae* were filed by *Evelle J. Younger,* Attorney General, *Jack R. Winkler,* Chief Assistant Attorney General, *Doris H. Maier,* Assistant Attorney General, and *Joseph P. Busch* for the Appellate Committee of the California District Attorneys Assn. et al.;

MR. JUSTICE POWELL delivered the opinion of the Court.

The issue in this case is whether a person arrested and held for trial under a prosecutor's information is constitutionally entitled to a judicial determination of probable cause for pretrial restraint of liberty.

## I

In March 1971 respondents Pugh and Henderson were arrested in Dade County, Fla. Each was charged with several offenses under a prosecutor's information.[1] Pugh was denied bail because one of the charges against him carried a potential life sentence, and Henderson remained in custody because he was unable to post a $4,500 bond.

In Florida, indictments are required only for prosecution of capital offenses. Prosecutors may charge all other crimes by information, without a prior preliminary hearing and without obtaining leave of court. Fla. Rule Crim. Proc. 3.140 (a); *State* v. *Hernandez*, 217 So. 2d 109 (Fla. 1968); *Di Bona* v. *State,* 121 So. 2d 192 (Fla. App. 1960). At the time respondents were arrested, a Florida rule seemed to authorize adversary preliminary hearings to test probable cause for detention in all cases. Fla. Rule Crim. Proc. 1.122 (before amendment in 1972).

by *William F. Hyland,* Attorney General, and *Howard E. Drucks,* Deputy Attorney General, for the State of New Jersey; and by *Kimberly B. Cheney,* Attorney General, and *Alan W. Cook,* Assistant Attorney General, for the State of Vermont.

[1] Respondent Pugh was arrested on March 3, 1971. On March 16 an information was filed charging him with robbery, carrying a concealed weapon, and possession of a firearm during commission of a felony. Respondent Henderson was arrested on March 2, and charged by information on March 19 with the offenses of breaking and entering and assault and battery. The record does not indicate whether there was an arrest warrant in either case.

But the Florida courts had held that the filing of an information foreclosed the suspect's right to a preliminary hearing. See *State ex rel. Hardy* v. *Blount,* 261 So. 2d 172 (Fla. 1972).[2] They had also held that habeas corpus could not be used, except perhaps in exceptional circumstances, to test the probable cause for detention under an information. See *Sullivan* v. *State ex rel. McCrory,* 49 So. 2d 794, 797 (Fla. 1951). The only possible methods for obtaining a judicial determination of probable cause were a special statute allowing a preliminary hearing after 30 days, Fla. Stat. Ann. § 907.045 (1973),[3] and arraignment, which the District Court found was often delayed a month or more after arrest. *Pugh* v. *Rainwater,* 332 F. Supp. 1107, 1110 (SD Fla. 1971).[4] As a result, a person charged by information could be detained for a substantial period solely on the decision of a prosecutor.

Respondents Pugh and Henderson filed a class action against Dade County officials in the Federal District

---

[2] Florida law also denies preliminary hearings to persons confined under indictment, see *Sangaree* v. *Hamlin,* 235 So. 2d 729 (Fla. 1970); Fla. Rule Crim. Proc. 3.131 (a); but that procedure is not challenged in this case. See *infra,* at 117 n. 19.

[3] This statute may have been construed to make the hearing permissive instead of mandatory. See *Evans* v. *State,* 197 So. 2d 323 (Fla. App. 1967); Fla. Op. Atty. Gen. 067–29 (1967). But cf. *Karz* v. *Overton,* 249 So. 2d 763 (Fla. App. 1971). It may also have been superseded by the subsequent amendments to the Rules of Criminal Procedure. *In re Florida Rules of Criminal Procedure,* 272 So. 2d 65 (1972).

[4] The Florida rules do not suggest that the issue of probable cause can be raised at arraignment, Fla. Rule Crim. Proc. 3.160, but counsel for petitioner represented at oral argument that arraignment affords the suspect an opportunity to "attack the sufficiency of the evidence to hold him." Tr. of Oral Arg. 17 (Mar. 25, 1974). The Court of Appeals assumed, without deciding, that this was true. 483 F. 2d 778, 781 n. 8 (CA5 1973).

Court,[5] claiming a constitutional right to a judicial hearing on the issue of probable cause and requesting declaratory and injunctive relief.[6] Respondents Turner and Faulk, also in custody under informations, subsequently intervened.[7] Petitioner Gerstein, the State Attorney for Dade County, was one of several defendants.[8]

After an initial delay while the Florida Legislature considered a bill that would have afforded preliminary hearings to persons charged by information, the District Court granted the relief sought. *Pugh* v. *Rainwater, supra.* The court certified the case as a class action under Fed. Rule Civ. Proc. 23 (b)(2), and held that the Fourth and Fourteenth Amendments give all arrested persons charged by information a right to a judicial hearing on the question of probable cause. The District Court ordered the Dade County defendants to give the named plaintiffs an immediate preliminary hearing to determine probable

---

[5] The complaint was framed under 42 U. S. C. § 1983, and jurisdiction in the District Court was based on 28 U. S. C. § 1343 (3).

[6] Respondents did not ask for release from state custody, even as an alternative remedy. They asked only that the state authorities be ordered to give them a probable cause determination. This was also the only relief that the District Court ordered for the named respondents. 332 F. Supp. 1107, 1115–1116, (SD Fla. 1971). Because release was neither asked nor ordered, the lawsuit did not come within the class of cases for which habeas corpus is the exclusive remedy. *Preiser* v. *Rodriguez,* 411 U. S. 475 (1973); see *Wolff* v. *McDonnell,* 418 U. S. 539, 554–555 (1974).

[7] Turner was being held on a charge of auto theft, following arrest on March 11, 1971. Faulk was arrested on March 19 on charges of soliciting a ride and possession of marihuana.

[8] The named defendants included justices of the peace and judges of small-claims courts, who were authorized to hold preliminary hearings in criminal cases, and a group of law enforcement officers with power to make arrests in Dade County. Gerstein was the only one who petitioned for certiorari.

cause for further detention.[9]  It also ordered them to submit a plan providing preliminary hearings in all cases instituted by information.

The defendants submitted a plan prepared by Sheriff E. Wilson Purdy, and the District Court adopted it with modifications.   The final order prescribed a detailed post-arrest procedure.   336 F. Supp. 490 (SD Fla. 1972). Upon arrest the accused would be taken before a magistrate for a "first appearance hearing."   The magistrate would explain the charges, advise the accused of his rights, appoint counsel if he was indigent, and proceed with a probable cause determination unless either the prosecutor or the accused was unprepared.   If either requested more time, the magistrate would set the date for a "preliminary hearing," to be held within four days if the accused was in custody and within 10 days if he had been released pending trial.   The order provided sanctions for failure to hold the hearing at prescribed times.   At the "preliminary hearing" the accused would be entitled to counsel, and he would be allowed to confront and cross-examine adverse witnesses, to summon favorable witnesses, and to have a transcript made on request.   If the magistrate found no probable cause, the accused would be discharged. He then could not be charged with the same offense by complaint or information, but only by indictment returned within 30 days.

---

[9] The District Court correctly held that respondents' claim for relief was not barred by the equitable restrictions on federal intervention in state prosecutions, *Younger* v. *Harris,* 401 U. S. 37 (1971). The injunction was not directed at the state prosecutions as such, but only at the legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution.   The order to hold preliminary hearings could not prejudice the conduct of the trial on the merits.   See *Conover* v. *Montemuro,* 477 F. 2d 1073, 1082 (CA3 1972); cf. *Perez* v. *Ledesma,* 401 U. S. 82 (1971); *Stefanelli* v. *Minard,* 342 U. S. 117 (1951).

The Court of Appeals for the Fifth Circuit stayed the District Court's order pending appeal, but while the case was awaiting decision, the Dade County judiciary voluntarily adopted a similar procedure of its own. Upon learning of this development, the Court of Appeals remanded the case for specific findings on the constitutionality of the new Dade County system. Before the District Court issued its findings, however, the Florida Supreme Court amended the procedural rules governing preliminary hearings statewide, and the parties agreed that the District Court should direct its inquiry to the new rules rather than the Dade County procedures.

Under the amended rules every arrested person must be taken before a judicial officer within 24 hours. Fla. Rule Crim. Proc. 3.130 (b). This "first appearance" is similar to the "first appearance hearing" ordered by the District Court in all respects but the crucial one: the magistrate does not make a determination of probable cause. The rule amendments also changed the procedure for preliminary hearings, restricting them to felony charges and codifying the rule that no hearings are available to persons charged by information or indictment. Rule 3.131; see *In re Rule 3.131 (b), Florida Rules of Criminal Procedure,* 289 So. 2d 3 (Fla. 1974).

In a supplemental opinion the District Court held that the amended rules had not answered the basic constitutional objection, since a defendant charged by information still could be detained pending trial without a judicial determination of probable cause. 355 F. Supp. 1286 (SD Fla. 1973). Reaffirming its original ruling, the District Court declared that the continuation of this practice was unconstitutional.[10] The Court of Appeals

---

[10] Although this ruling held a statewide "legislative rule" unconstitutional, it was not outside the jurisdiction of a single judge by virtue of 28 U. S. C. § 2281. The original complaint did not ask for

110

affirmed, 483 F. 2d 778 (1973), modifying the District Court's decree in minor particulars and suggesting that the form of preliminary hearing provided by the amended Florida rules would be acceptable, as long as it was provided to all defendants in custody pending trial. *Id.*, at 788–789.

State Attorney Gerstein petitioned for review, and we granted certiorari because of the importance of the issue.[11]

an injunction against enforcement of any state statute or legislative rule of statewide application, since the practice of denying preliminary hearings to persons charged by information was then embodied only in judicial decisions. The District Court therefore had jurisdiction to issue the initial injunction, and the Court of Appeals had jurisdiction over the appeal. On remand, the constitutionality of a state "statute" was drawn into question for the first time when the criminal rules were amended. The District Court's supplemental opinion can fairly be read as a declaratory judgment that the amended rules were unconstitutional; the injunctive decree was never amended to incorporate that holding; and the opinion in the Court of Appeals is not inconsistent with the conclusion that the District Court did not enjoin enforcement of the statewide rule. See 483 F. 2d, at 788–790. Accordingly, a district court of three judges was not required for the issuance of this order. See *Kennedy* v. *Mendoza-Martinez*, 372 U. S. 144, 152–155 (1963); *Flemming* v. *Nestor*, 363 U. S. 603, 606–608 (1960).

[11] At oral argument counsel informed us that the named respondents have been convicted. Their pretrial detention therefore has ended. This case belongs, however, to that narrow class of cases in which the termination of a class representative's claim does not moot the claims of the unnamed members of the class. See *Sosna* v. *Iowa*, 419 U. S. 393 (1975). Pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted. The individual could nonetheless suffer repeated deprivations, and it is certain that other persons similarly situated will be detained under the allegedly unconstitutional procedures. The claim, in short, is one that is distinctly "capable of repetition, yet evading review."

At the time the complaint was filed, the named respondents were

414 U. S. 1062 (1973). We affirm in part and reverse in part.

## II

As framed by the proceedings below, this case presents two issues: whether a person arrested and held for trial on an information is entitled to a judicial determination of probable cause for detention, and if so, whether the adversary hearing ordered by the District Court and approved by the Court of Appeals is required by the Constitution.

## A

Both the standards and procedures for arrest and detention have been derived from the Fourth Amendment and its common-law antecedents. See *Cupp* v. *Murphy,* 412 U. S. 291, 294–295 (1973); *Ex parte Bollman,* 4 Cranch 75 (1807); *Ex parte Burford,* 3 Cranch 448 (1806). The standard for arrest is probable cause, defined in terms of facts and circumstances "sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense."

members of a class of persons detained without a judicial probable cause determination, but the record does not indicate whether any of them were still in custody awaiting trial when the District Court certified the class. Such a showing ordinarily would be required to avoid mootness under *Sosna.* But this case is a suitable exception to that requirement. See *Sosna, supra,* at 402 n. 11; cf. *Rivera* v. *Freeman,* 469 F. 2d 1159, 1162–1163 (CA9 1972). The length of pretrial custody cannot be ascertained at the outset, and it may be ended at any time by release on recognizance, dismissal of the charges, or a guilty plea, as well as by acquittal or conviction after trial. It is by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class. Moreover, in this case the constant existence of a class of persons suffering the deprivation is certain. The attorney representing the named respondents is a public defender, and we can safely assume that he has other clients with a continuing live interest in the case.

*Beck* v. *Ohio,* 379 U. S. 89, 91 (1964). See also *Henry* v. *United States,* 361 U. S. 98 (1959); *Brinegar* v. *United States,* 338 U. S. 160, 175–176 (1949). This standard, like those for searches and seizures, represents a necessary accommodation between the individual's right to liberty and the State's duty to control crime.

> "These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." *Id.,* at 176.

To implement the Fourth Amendment's protection against unfounded invasions of liberty and privacy, the Court has required that the existence of probable cause be decided by a neutral and detached magistrate whenever possible. The classic statement of this principle appears in *Johnson* v. *United States,* 333 U. S. 10, 13–14 (1948):

> "The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its pro-

tection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime."

See also *Terry* v. *Ohio,* 392 U. S. 1, 20–22 (1968).[12]

Maximum protection of individual rights could be assured by requiring a magistrate's review of the factual justification prior to any arrest, but such a requirement would constitute an intolerable handicap for legitimate law enforcement. Thus, while the Court has expressed a preference for the use of arrest warrants when feasible, *Beck* v. *Ohio, supra,* at 96; *Wong Sun* v. *United States,* 371 U. S. 471, 479–482 (1963), it has never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant. See *Ker* v. *California,* 374 U. S. 23 (1963); *Draper* v. *United States,* 358 U. S. 307 (1959); *Trupiano* v. *United States,* 334 U. S. 699, 705 (1948).[13]

Under this practical compromise, a policeman's on-the-scene assessment of probable cause provides legal justifi-

---

[12] We reiterated this principle in *United States* v. *United States District Court,* 407 U. S. 297 (1972). In terms that apply equally to arrests, we described the "very heart of the Fourth Amendment directive" as a requirement that "where practical, a governmental search and seizure should represent both the efforts of the officer to gather evidence of wrongful acts and the judgment of the magistrate that the collected evidence is sufficient to justify invasion of a citizen's private premises or conversation." *Id.,* at 316.

[13] Another aspect of *Trupiano* was overruled in *United States* v. *Rabinowitz,* 339 U. S. 56 (1950), which was overruled in turn by *Chimel* v. *California,* 395 U. S. 752 (1969).

The issue of warrantless arrest that has generated the most controversy, and that remains unsettled, is whether and under what circumstances an officer may enter a suspect's home to make a warrantless arrest. See *Coolidge* v. *New Hampshire,* 403 U. S. 443, 474–481 (1971); *id.,* at 510–512, and n. 1 (WHITE, J., dissenting); *Jones* v. *United States,* 357 U. S. 493, 499–500 (1958).

cation for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest. Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases significantly. The consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships. See R. Goldfarb, Ransom 32–91 (1965); L. Katz, Justice Is the Crime 51–62 (1972). Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty. See, *e. g.*, 18 U. S. C. §§ 3146 (a)(2), (5). When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty. Accordingly, we hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest.

This result has historical support in the common law that has guided interpretation of the Fourth Amendment. See *Carroll* v. *United States,* 267 U. S. 132, 149 (1925). At common law it was customary, if not obligatory, for an arrested person to be brought before a justice of the peace shortly after arrest. 2 M. Hale, Pleas of the Crown 77, 81, 95, 121 (1736); 2 W. Hawkins, Pleas of the Crown 116–117 (4th ed. 1762). See also *Kurtz* v. *Moffitt,* 115 U. S. 487, 498–499 (1885).[14] The justice of the peace

---

[14] The primary motivation for the requirement seems to have been the penalty for allowing an offender to escape, if he had in fact

would "examine" the prisoner and the witnesses to determine whether there was reason to believe the prisoner had committed a crime. If there was, the suspect would be committed to jail or bailed pending trial. If not, he would be discharged from custody. 1 M. Hale, *supra,* at 583–586; 2 W. Hawkins, *supra,* at 116–119; 1 J. Stephen, History of the Criminal Law of England 233 (1883).[15] The initial determination of probable cause also could be reviewed by higher courts on a writ of habeas corpus. 2 W. Hawkins, *supra,* at 112–115; 1 J. Stephen, *supra,* at 243; see *Ex parte Bollman,* 4 Cranch, at 97–101. This practice furnished the model for criminal procedure in America immediately following the adoption of the

---

committed the crime, and the fear of liability for false imprisonment, if he had not. But Hale also recognized that a judicial warrant of commitment, called a *mittimus,* was required for more than brief detention.

"When a private person hath arrested a felon, or one suspected of felony, he may detain him in custody till he can reasonably dismiss himself of him; but with as much speed as conveniently he can, he may do either of these things.

"1. He may carry him to the common gaol, . . . but that is now rarely done.

"2. He may deliver him to the constable of the vill, who may either carry him to the common gaol, . . . or to a justice of peace to be examined, and farther proceeded against as case shall require. . . .

"3. Or he may carry him immediately to any justice of peace of the county where he is taken, who upon examination may discharge, bail, or commit him, as the case shall require.

"And the bringing the offender either by the constable or private person to a justice of peace is most usual and safe, because a gaoler will expect a *Mittimus* for his warrant of detaining." 1 M. Hale, Pleas of the Crown 589–590 (1736).

[15] The examination of the prisoner was inquisitorial, and the witnesses were questioned outside the prisoner's presence. Although this method of proceeding was considered quite harsh, 1 J. Stephen, *supra,* at 219–225, it was well established that the prisoner was entitled to be discharged if the investigation turned up insufficient evidence of his guilt. *Id.,* at 233.

Fourth Amendment, see *Ex parte Bollman, supra;* [16] *Ex parte Burford,* 3 Cranch 448 (1806); *United States* v. *Hamilton,* 3 Dall. 17 (1795), and there are indications that the Framers of the Bill of Rights regarded it as a model for a "reasonable" seizure. See *Draper* v. *United States,* 358 U. S., at 317–320 (DOUGLAS, J., dissenting).[17]

## B

Under the Florida procedures challenged here, a person arrested without a warrant and charged by information may be jailed or subjected to other restraints pending trial without any opportunity for a probable cause determination.[18] Petitioner defends this practice on the

---

[16] In *Ex parte Bollman,* two men charged in the Aaron Burr case were committed following an examination in the Circuit Court of the District of Columbia. They filed a petition for writ of habeas corpus in the Supreme Court. The Court, in an opinion by Mr. Chief Justice Marshall, affirmed its jurisdiction to issue habeas corpus to persons in custody by order of federal trial courts. Then, following arguments on the Fourth Amendment requirement of probable cause, the Court surveyed the evidence against the prisoners and held that it did not establish probable cause that they were guilty of treason. The prisoners were discharged.

[17] See also N. Lasson, The History and Development of the Fourth Amendment to the United States Constitution 15–16 (1937). A similar procedure at common law, the warrant for recovery of stolen goods, is said to have furnished the model for a "reasonable" search under the Fourth Amendment. The victim was required to appear before a justice of the peace and make an oath of probable cause that his goods could be found in a particular place. After the warrant was executed, and the goods seized, the victim and the alleged thief would appear before the justice of the peace for a prompt determination of the cause for seizure of the goods and detention of the thief. 2 M. Hale, *supra,* at 149–152; T. Taylor, Two Studies in Constitutional Interpretation 24–25, 39–40 (1969); see *Boyd* v. *United States,* 116 U. S. 616, 626–629 (1886).

[18] A person arrested under a warrant would have received a prior judicial determination of probable cause. Under Fla. Rule Crim.

ground that the prosecutor's decision to file an information is itself a determination of probable cause that furnishes sufficient reason to detain a defendant pending trial. Although a conscientious decision that the evidence warrants prosecution affords a measure of protection against unfounded detention, we do not think prosecutorial judgment standing alone meets the requirements of the Fourth Amendment. Indeed, we think the Court's previous decisions compel disapproval of the Florida procedure. In *Albrecht* v. *United States,* 273 U. S. 1, 5 (1927), the Court held that an arrest warrant issued solely upon a United States Attorney's information was invalid because the accompanying affidavits were defective. Although the Court's opinion did not explicitly state that the prosecutor's official oath could not furnish probable cause, that conclusion was implicit in the judgment that the arrest was illegal under the Fourth Amendment.[19] More recently, in *Coolidge* v. *New Hampshire,* 403 U. S. 443, 449–453 (1971), the Court held that a prosecutor's responsibility to law enforcement is inconsistent with the constitutional role of a neutral and detached magistrate. We reaffirmed that principle in *Shad-*

Proc. 3.120, a warrant may be issued upon a sworn complaint that states facts showing that the suspect has committed a crime. The magistrate may also take testimony under oath to determine if there is reasonable ground to believe the complaint is true.

[19] By contrast, the Court has held that an indictment, "fair upon its face," and returned by a "properly constituted grand jury," conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry. *Ex parte United States,* 287 U. S. 241, 250 (1932). See also *Giordenello* v. *United States,* 357 U. S. 480, 487 (1958). The willingness to let a grand jury's judgment substitute for that of a neutral and detached magistrate is attributable to the grand jury's relationship to the courts and its historical role of protecting individuals from unjust prosecution. See *United States* v. *Calandra,* 414 U. S. 338, 342–346 (1974).

*wick* v. *City of Tampa,* 407 U. S. 345 (1972), and held that probable cause for the issuance of an arrest warrant must be determined by someone independent of police and prosecution. See also *United States* v. *United States District Court,* 407 U. S. 297, 317 (1972).[20] The reason for this separation of functions was expressed by Mr. Justice Frankfurter in a similar context:

> "A democratic society, in which respect for the dignity of all men is central, naturally guards against the misuse of the law enforcement process. Zeal in tracking down crime is not in itself an assurance of soberness of judgment. Disinterestedness in law enforcement does not alone prevent disregard of cherished liberties. Experience has therefore counseled that safeguards must be provided against the dangers of the overzealous as well as the despotic. The awful instruments of the criminal law cannot be entrusted to a single functionary. The complicated process of criminal justice is therefore divided into different parts, responsibility for which is separately vested in the various participants upon whom the criminal law relies for its vindication." *McNabb* v. *United States,* 318 U. S. 332, 343 (1943).

In holding that the prosecutor's assessment of probable

---

[20] The Court had earlier reached a different result in *Ocampo* v. *United States,* 234 U. S. 91 (1914), a criminal appeal from the Philippine Islands. Interpreting a statutory guarantee substantially identical to the Fourth Amendment, Act of July 1, 1902, § 5, 32 Stat. 693, the Court held that an arrest warrant could issue solely upon a prosecutor's information. The Court has since held that interpretation of a statutory guarantee applicable to the Philippines is not conclusive for interpretation of a cognate provision in the Federal Constitution, *Green* v. *United States,* 355 U. S. 184, 194–198 (1957). Even if it were, the result reached in *Ocampo* is incompatible with the later holdings of *Albrecht, Coolidge,* and *Shadwick.*

cause is not sufficient alone to justify restraint of liberty pending trial, we do not imply that the accused is entitled to judicial oversight or review of the decision to prosecute. Instead, we adhere to the Court's prior holding that a judicial hearing is not prerequisite to prosecution by information. *Beck* v. *Washington,* 369 U. S. 541, 545 (1962); *Lem Woon* v. *Oregon,* 229 U. S. 586 (1913). Nor do we retreat from the established rule that illegal arrest or detention does not void a subsequent conviction. *Frisbie* v. *Collins,* 342 U. S. 519 (1952); *Ker* v. *Illinois,* 119 U. S. 436 (1886). Thus, as the Court of Appeals noted below, although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause. 483 F. 2d, at 786–787. Compare *Scarbrough* v. *Dutton,* 393 F. 2d 6 (CA5 1968), with *Brown* v. *Fauntleroy,* 143 U. S. App. D. C. 116, 442 F. 2d 838 (1971), and *Cooley* v. *Stone,* 134 U. S. App. D. C. 317, 414 F. 2d 1213 (1969).

### III

Both the District Court and the Court of Appeals held that the determination of probable cause must be accompanied by the full panoply of adversary safeguards—counsel, confrontation, cross-examination, and compulsory process for witnesses. A full preliminary hearing of this sort is modeled after the procedure used in many States to determine whether the evidence justifies going to trial under an information or presenting the case to a grand jury. See *Coleman* v. *Alabama,* 399 U. S. 1 (1970); Y. Kamisar, W. LaFave & J. Israel, Modern Criminal Procedure 957–967, 996–1000 (4th ed. 1974). The standard of proof required of the prosecution is usually referred to as "probable cause," but in some jurisdictions it may approach a prima facie case of guilt.

ALI, Model Code of Pre-arraignment Procedure, Commentary on Art. 330, pp. 90–91 (Tent. Draft No. 5, 1972). When the hearing takes this form, adversary procedures are customarily employed. The importance of the issue to both the State and the accused justifies the presentation of witnesses and full exploration of their testimony on cross-examination. This kind of hearing also requires appointment of counsel for indigent defendants. *Coleman* v. *Alabama, supra.* And, as the hearing assumes increased importance and the procedures become more complex, the likelihood that it can be held promptly after arrest diminishes. See ALI, Model Code of Pre-arraignment Procedure, *supra,* at 33–34.

These adversary safeguards are not essential for the probable cause determination required by the Fourth Amendment. The sole issue is whether there is probable cause for detaining the arrested person pending further proceedings. This issue can be determined reliably without an adversary hearing. The standard is the same as that for arrest.[21] That standard—probable cause to believe the suspect has committed a crime—traditionally has been decided by a magistrate in a nonadversary proceeding on hearsay and written testimony, and the Court has approved these informal modes of proof.

> "Guilt in a criminal case must be proved beyond a reasonable doubt and by evidence confined to that which long experience in the common-law tradition,

---

[21] Because the standards are identical, ordinarily there is no need for further investigation before the probable cause determination can be made.

"Presumably, whomever the police arrest they must arrest on 'probable cause.' It is not the function of the police to arrest, as it were, at large and to use an interrogating process at police headquarters in order to determine whom they should charge before a committing magistrate on 'probable cause.'" *Mallory* v. *United States,* 354 U. S. 449, 456 (1957).

to some extent embodied in the Constitution, has crystallized into rules of evidence consistent with that standard. These rules are historically grounded rights of our system, developed to safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty and property.

.        .        .        .        .

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved." *Brinegar* v. *United States,* 338 U. S., at 174–175.

Cf. *McCray* v. *Illinois,* 386 U. S. 300 (1967).

The use of an informal procedure is justified not only by the lesser consequences of a probable cause determination but also by the nature of the determination itself. It does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt. See F. Miller, Prosecution: The Decision to Charge a Suspect with a Crime 64–109 (1969).[22] This is not to say that confrontation and

---

[22] In *Morrissey* v. *Brewer,* 408 U. S. 471 (1972), and *Gagnon* v. *Scarpelli,* 411 U. S. 778 (1973), we held that a parolee or probationer arrested prior to revocation is entitled to an informal preliminary hearing at the place of arrest, with some provision for live testimony. 408 U. S., at 487; 411 U. S., at 786. That preliminary hearing, more than the probable cause determination required by the Fourth Amendment, serves the purpose of gathering and preserving live testimony, since the final revocation hearing frequently is held at some distance from the place where the violation occurred. 408 U. S., at 485; 411 U. S., at 782–783, n. 5. Moreover, revocation

cross-examination might not enhance the reliability of probable cause determinations in some cases. In most cases, however, their value would be too slight to justify holding, as a matter of constitutional principle, that these formalities and safeguards designed for trial must also be employed in making the Fourth Amendment determination of probable cause.[23]

Because of its limited function and its nonadversary character, the probable cause determination is not a "critical stage" in the prosecution that would require appointed counsel. The Court has identified as "critical stages" those pretrial procedures that would impair defense on the merits if the accused is required to proceed without counsel. *Coleman* v. *Alabama*, 399 U. S. 1 (1970); *United States* v. *Wade*, 388 U. S. 218, 226–227 (1967). In *Coleman* v. *Alabama*, where the Court held that a preliminary hearing was a critical stage of an Alabama prosecution, the majority and concurring opinions identified two critical factors that distinguish the Alabama preliminary hearing from the probable cause determination required by the Fourth Amendment. First,

proceedings may offer less protection from initial error than the more formal criminal process, where violations are defined by statute and the prosecutor has a professional duty not to charge a suspect with crime unless he is satisfied of probable cause. See ABA Code of Professional Responsibility DR 7–103 (A) (Final Draft 1969) (a prosecutor "shall not institute or cause to be instituted criminal charges when he knows or it is obvious that the charges are not supported by probable cause"); American Bar Association Project on Standards for Criminal Justice, The Prosecution Function §§ 1.1, 3.4, 3.9 (1974); American College of Trial Lawyers, Code of Trial Conduct, Rule 4 (c) (1963).

[23] Criminal justice is already overburdened by the volume of cases and the complexities of our system. The processing of misdemeanors, in particular, and the early stages of prosecution generally are marked by delays that can seriously affect the quality of justice. A constitutional doctrine requiring adversary hearings for all persons detained pending trial could exacerbate the problem of pretrial delay.

under Alabama law the function of the preliminary hearing was to determine whether the evidence justified charging the suspect with an offense. A finding of no probable cause could mean that he would not be tried at all. The Fourth Amendment probable cause determination is addressed only to pretrial custody. To be sure, pretrial custody may affect to some extent the defendant's ability to assist in preparation of his defense, but this does not present the high probability of substantial harm identified as controlling in *Wade* and *Coleman*. Second, Alabama allowed the suspect to confront and cross-examine prosecution witnesses at the preliminary hearing. The Court noted that the suspect's defense on the merits could be compromised if he had no legal assistance for exploring or preserving the witnesses' testimony. This consideration does not apply when the prosecution is not required to produce witnesses for cross-examination.

Although we conclude that the Constitution does not require an adversary determination of probable cause, we recognize that state systems of criminal procedure vary widely. There is no single preferred pretrial procedure, and the nature of the probable cause determination usually will be shaped to accord with a State's pretrial procedure viewed as a whole. While we limit our holding to the precise requirement of the Fourth Amendment, we recognize the desirability of flexibility and experimentation by the States. It may be found desirable, for example, to make the probable cause determination at the suspect's first appearance before a judicial officer,[24]

---

[24] Several States already authorize a determination of probable cause at this stage or immediately thereafter. See, *e. g.*, Hawaii Rev. Stat. §§ 708–9 (5), 710–7 (1968); Vt. Rules Crim. Proc. 3 (b), 5 (c). This Court has interpreted the Federal Rules of Criminal Procedure to require a determination of probable cause at the first appearance. *Jaben* v. *United States,* 381 U. S. 214, 218 (1965); *Mallory* v. *United States,* 354 U. S., at 454.

see *McNabb* v. *United States,* 318 U. S., at 342–344, or the determination may be incorporated into the procedure for setting bail or fixing other conditions of pretrial release. In some States, existing procedures may satisfy the requirement of the Fourth Amendment. Others may require only minor adjustment, such as acceleration of existing preliminary hearings. Current proposals for criminal procedure reform suggest other ways of testing probable cause for detention.[25] Whatever

---

[25] Under the Uniform Rules of Criminal Procedure (Proposed Final Draft 1974), a person arrested without a warrant is entitled, "without unnecessary delay," to a first appearance before a magistrate and a determination that grounds exist for issuance of an arrest warrant. The determination may be made on affidavits or testimony, in the presence of the accused. Rule 311. Persons who remain in custody for inability to qualify for pretrial release are offered another opportunity for a probable cause determination at the detention hearing, held no more than five days after arrest. This is an adversary hearing, and the parties may summon witnesses, but reliable hearsay evidence may be considered. Rule 344.

The ALI Model Code of Pre-arraignment Procedure (Tent. Draft No. 5, 1972, and Tent. Draft No. 5A, 1973) also provides a first appearance, at which a warrantless arrest must be supported by a reasonably detailed written statement of facts. § 310.1. The magistrate may make a determination of probable cause to hold the accused, but he is not required to do so and the accused may request an attorney for an "adjourned session" of the first appearance to be held within two "court days." At that session, the magistrate makes a determination of probable cause upon a combination of written and live testimony:

"The arrested person may present written and testimonial evidence and arguments for his discharge and the state may present additional written and testimonial evidence and arguments that there is reasonable cause to believe that he has committed the crime of which he is accused. The state's submission may be made by means of affidavits; and no witnesses shall be required to appear unless the court, in the light of the evidence and arguments submitted by the parties, determines that there is a basis for believing that the appearance of one or more witnesses for whom the arrested person seeks

procedure a State may adopt, it must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty,[26] and this determination must be made by a judicial officer either before or promptly after arrest.[27]

---

subpoenas might lead to a finding that there is no reasonable cause." § 310.2 (2) (Tent. Draft No. 5A, 1973).

[26] Because the probable cause determination is not a constitutional prerequisite to the charging decision, it is required only for those suspects who suffer restraints on liberty other than the condition that they appear for trial. There are many kinds of pretrial release and many degrees of conditional liberty. See 18 U. S. C. § 3146; American Bar Association Project on Standards for Criminal Justice, Pretrial Release § 5.2 (1974); Uniform Rules of Criminal Procedure, Rule 341 (Proposed Final Draft 1974). We cannot define specifically those that would require a prior probable cause determination, but the key factor is significant restraint on liberty.

[27] In his concurring opinion, MR. JUSTICE STEWART objects to the Court's choice of the Fourth Amendment as the rationale for decision and suggests that the Court offers less procedural protection to a person in jail than it requires in certain civil cases. Here we deal with the complex procedures of a criminal case and a threshold right guaranteed by the Fourth Amendment. The historical basis of the probable cause requirement is quite different from the relatively recent application of variable procedural due process in debtor-creditor disputes and termination of government-created benefits. The Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the "process that is due" for seizures of person or property in criminal cases, including the detention of suspects pending trial. Part II–A, *supra*. Moreover, the Fourth Amendment probable cause determination is in fact only the *first* stage of an elaborate system, unique in jurisprudence, designed to safeguard the rights of those accused of criminal conduct. The relatively simple civil procedures (*e. g.*, prior interview with school principal before suspension) presented in the cases cited in the concurring opinion are inapposite and irrelevant in the wholly different context of the criminal justice system.

It would not be practicable to follow the further suggestion implicit in MR. JUSTICE STEWART's concurring opinion that we leave for

## IV

We agree with the Court of Appeals that the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention, and we accordingly affirm that much of the judgment. As we do not agree that the Fourth Amendment requires the adversary hearing outlined in the District Court's decree, we reverse in part and remand to the Court of Appeals for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE STEWART, with whom MR. JUSTICE DOUGLAS, MR. JUSTICE BRENNAN, AND MR. JUSTICE MARSHALL join, concurring.

I concur in Parts I and II of the Court's opinion, since the Constitution clearly requires at least a timely judicial determination of probable cause as a prerequisite to pretrial detention. Because Florida does not provide all defendants in custody pending trial with a fair and reliable determination of probable cause for their detention, the respondents and the members of the class they represent are entitled to declaratory and injunctive relief.

Having determined that Florida's current pretrial detention procedures are constitutionally inadequate, I think it is unnecessary to go further by way of dicta. In particular, I would not, in the abstract, attempt to specify those procedural protections that constitutionally need *not* be accorded incarcerated suspects awaiting trial.

---

another day determination of the procedural safeguards that are required in making a probable cause determination under the Fourth Amendment. The judgment under review both declares the right not to be detained without a probable cause determination and affirms the District Court's order prescribing an adversary hearing for the implementation of that right. The circumstances of the case thus require a decision on both issues.

Specifically, I see no need in this case for the Court to say that the Constitution extends less procedural protection to an imprisoned human being than is required to test the propriety of garnishing a commercial bank account, *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.,* 419 U. S. 601; the custody of a refrigerator, *Mitchell* v. *W. T. Grant Co.,* 416 U. S. 600; the temporary suspension of a public school student, *Goss* v. *Lopez,* 419 U. S. 565; or the suspension of a driver's license, *Bell* v. *Burson,* 402 U. S. 535. Although it may be true that the Fourth Amendment's "balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in criminal cases," *ante,* at 125 n. 27, this case does not involve an initial arrest, but rather the continuing incarceration of a presumptively innocent person. Accordingly, I cannot join the Court's effort to foreclose any claim that the traditional requirements of constitutional due process are applicable in the context of pretrial detention.

It is the prerogative of each State in the first instance to develop pretrial procedures that provide defendants in pretrial custody with the fair and reliable determination of probable cause for detention required by the Constitution. Cf. *Morrissey* v. *Brewer,* 408 U. S. 471, 488. The constitutionality of any particular method for determining probable cause can be properly decided only by evaluating a State's pretrial procedures as a whole, not by isolating a particular part of its total system. As the Court recognizes, great diversity exists among the procedures employed by the States in this aspect of their criminal justice system. *Ante,* at 123–124.

There will be adequate opportunity to evaluate in an appropriate future case the constitutionality of any new procedures that may be adopted by Florida in response to the Court's judgment today holding that Florida's present procedures are constitutionally inadequate.