Lawrence NESTLER and Marshall Allen Mason, III, on behalf of themselves and all others similarly situated, Appellants,

v.

The BOARD OF LAW EXAMINERS OF the STATE OF NORTH CAROLINA and James B. Swails, Fred P. Parker, III, Horace E. Stacy, Jr., Robert C. Howison, Jr., W. H. McElwee, George H. McNeill, Francis I. Parker, Eric C. Michaux, Charles G. Buck and William L. Mills, as members of the aforesaid Board of Law Examiners, Appellees.

No. 79–1002.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 5, 1979.

Decided Jan. 11, 1980.

Charles A. Bentley, Jr., Durham, N. C. (North Central Legal Assistance Program; James J. Johnston, Edwards & Johnston, Durham, N. C., on brief), for appellants.

Frank P. Ward, Jr., Robert A. Valois, Raleigh, N. C. (Armistead J. Maupin, Maupin, Taylor & Ellis, P. A., Raleigh, N. C., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, BRYAN, Senior Circuit Judge, and BUTZNER, Circuit Judge.

HAYNSWORTH, Chief Judge:

Plaintiffs filed this action under 42 U.S.C. § 1983 seeking injunctive relief and a declaration that certain North Carolina rules regarding admission to the practice of law were unconstitutional. Later, they sought leave to amend their complaint to add a claim for damages. The district court denied leave to amend, and subsequently dismissed the action as moot, since, in the interim, plaintiffs had been admitted to the North Carolina bar. Plaintiffs appeal, and we affirm the judgment of the district court.

While attending law school in 1974, plaintiffs Nestler and Mason each entered a plea of guilty to the misdemeanor of possession of marijuana. Following interviews before the Board of Law Examiners (Board), each was denied permission to sit for the 1975 bar examination. The denials were based upon Rule VIII, Section 1, of the Rules Governing Admission to the Practice of Law in the State of North Carolina, which requires applicants to establish that they are possessed of good moral character and entitled to high regard and public confidence.

Plaintiffs sought review of the Board's decision in state court, raising several constitutional contentions. They abandoned the state court action, however, before a ruling was made. Instead, plaintiffs chose to pursue this action in the District Court, which alleged basically that the bar rules violate due process by vesting in the Board unfettered discretion, free of guiding standards, to determine what constitutes good

moral character. The action named as defendants the Board and Board members in their official capacities, and sought only declaratory and injunctive relief.

During the pendency of this action, plaintiffs applied to take the 1978 bar examination. The Board found them possessed of the requisite moral character and allowed plaintiffs to take the examination, which they passed. Subsequently, each was admitted to the practice of law.[1]

■ In June, 1978, plaintiffs sought leave to amend their complaint to seek damages from the Board members in their individual capacities. The District Court denied such leave. Because the court did not abuse its discretion in so ruling, we affirm.

Plaintiffs do not contend that they were unaware of the right to pray for monetary damages in their original complaint. Indeed, they expressly chose not to seek such relief. In response to a motion to dismiss in which defendants expressed concern over whether the complaint sought monetary damages, plaintiffs stated that theirs was "not a suit for damages, but for declaratory and equitable relief, as is clear from the complaint." During the three year pendency of the case, before filing their motion to amend, plaintiffs did nothing to indicate that their conscious choice to eschew monetary relief was anything but unequivocal.

Under these circumstances, and because the amendment would inject for the first time the element of individual liability on the part of Board members, the denial of leave to amend was well within the court's broad discretionary power.

■ Having denied leave to amend, the district court correctly determined that the prayer for injunctive and declaratory relief was rendered moot by plaintiffs' admission to the bar. Plaintiffs assert that the controversy remains live because filed as a class action. However, no plaintiff class was certified. Indeed, plaintiffs never moved for class certification. Accordingly, the class is not considered as a separate entity, *Shelton v. Pargo, Inc.*, 582 F.2d 1298 (4th Cir. 1978), and mootness of plaintiffs' claims renders moot the entire case. *See Indianapolis School Commissions v. Jacobs*, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975).

■ Moreover, contrary to plaintiffs' contention, this case is not reviewable as raising an issue "capable of repetition, yet evading review." Under that doctrine, where no class has been certified, a case will not be considered moot if the challenged action is in duration too short to be litigated fully before its cessation and there is a reasonable expectation that the complaining party will be subject to the same action again. *Weinstein v. Bradford*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). The latter condition clearly cannot be satisfied in this case, since plaintiffs will never again be required to take the North Carolina bar examination or the moral character interview. Moreover, the state bar rules provide that one failing to pass the moral character portion of the application process may reapply in three years, which is a substantially longer period than those generally found to satisfy the "capable of repetition, yet evading review" test. *See, e. g., Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (period of pretrial detention); *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1974) (one-year residency requirement).

Finally, plaintiffs contend that their claims for equitable relief still present a live controversy because the Board's 1975 determination that they were not morally fit to practice law will remain on their records and will hinder their efforts to become licensed as attorneys in other states. Such a claim is premature, however, since nothing

---

1. After commencement of the suit in 1975, the district court ordered that plaintiffs be allowed to take the 1975 bar examination, but that the results not be released unless and until plaintiffs prevailed in their suit. The results were subsequently ordered released, and showed that each had passed. In September 1978, the state court ruled that plaintiffs were eligible to be licensed on the basis of the 1975 examination and the 1978 moral character interviews. By that time, however, each had taken the 1978 examination.

in the record suggests that plaintiffs have applied for bar membership in other states. At any rate, plaintiffs will be required to disclose to such state bar examiners their convictions for possession of marijuana. The fact that they were ultimately licensed in North Carolina, despite the convictions, should aid plaintiffs if and when they do seek licensure in another jurisdiction.[2]

*AFFIRMED.*

2. There is a jurisdictional problem in the case. *See Woodard v. Virginia Board of Bar Examiners*, 598 F.2d 1345 (4th Cir. 1979). We need not address it, however, since there clearly is no live controversy.