28 F.3d 1213
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Eugene CONLEY, Plaintiff-Appellant,
v.
K.F. WILLIAMS, Defendant-Appellee.
 No. 93-5524.
 United States Court of Appeals, Sixth Circuit.
 July 5, 1994.
 
 Before: GUY and NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an appeal from an order dismissing a civil rights action brought against the Memphis/Shelby County Airport Authority and certain of its officials by an airline baggage handler. The plaintiff's claims arose out of an incident in which he was arrested for traveling outside of designated driving lanes on the airport apron. He alleges that his arrest constituted an unlawful seizure under the Fourth Amendment. The district court concluded that the arrest was lawful and that the plaintiff could not show a deprivation of any constitutional right. We agree, and we shall affirm the order of dismissal.
 
 I.
 
 2
 The plaintiff, Eugene Conley, was employed by Northwest Airlines at the Memphis, Tennessee, airport. On the morning of December 1, 1986, Mr. Conley was proceeding to airport gate 44-B in a vehicle known as a "tug." According to Mr. Conley, the driving lanes designated by the Airport Authority were congested. To avoid the congestion, Mr. Conley turned his vehicle out of the driving lanes and took a more direct route to the gate. When he reached his destination, Mr. Conley was stopped by an Airport Authority officer named K.F. Williams. Officer Williams asked to see Mr. Conley's driver's license, and Mr. Conley refused to surrender it. Officer Williams then asked for Mr. Conley's airport identification, which Mr. Conley provided.
 
 
 3
 Officer Williams placed Mr. Conley under arrest, and Conley claims that Officer Williams dragged him violently to the ground in the process. The officer handcuffed Mr. Conley, put him in a police car, and took him to a holding room where he remained handcuffed to a chair for several hours. Officers from the Memphis Police Department arrived later that day and transported Mr. Conley to jail. Although Mr. Conley was never charged with a traffic violation, he was charged with resisting arrest and with breach of the peace.
 
 
 4
 Mr. Conley subsequently brought suit under 42 U.S.C. Sec. 1983, claiming that the stop, the request for his driver's license, and the subsequent arrest violated his Fourth Amendment rights. Named as defendants, in addition to the Memphis/Shelby County Airport Authority, were Officer Williams, Doyle Reed, Patricia Chatwin, and Larry Cox, all of whom held official positions within the Authority.
 
 
 5
 Based on qualified immunity grounds, the district court dismissed the claims asserted against the defendant officials in their individual capacities. (The plaintiff does not appeal this order.) The case proceeded against the Airport Authority and the defendant officials in their official capacities. The defendants thereafter presented the court with statutory materials which purported to establish Officer Williams' authority under state law to arrest Mr. Conley for driving outside the airport traffic lanes. On the strength of this material, the district court determined that Mr. Conley's arrest was proper and that he had not suffered a constitutional deprivation. Mr. Conley's remaining claims were therefore dismissed. Mr. Conley filed a motion for reconsideration, and the district court denied the motion. Mr. Conley now appeals the order of dismissal and the denial of the motion for reconsideration.
 
 II.
 
 6
 In Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978), the Supreme Court held that under 42 U.S.C. Sec. 1983 municipalities can be held liable as "persons" for depriving a plaintiff of his constitutional rights, as long as "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. at 690. In order to subject the defendants to Sec. 1983 liability in their official capacities, therefore, Mr. Conley must show that a deprivation of his constitutional rights occurred as a result of an official policy.[1]
 
 
 7
 The defendants do not deny that Officer Williams acted pursuant to official policy when he stopped Mr. Conley and asked him to produce his license; they argue, rather, that Officer Williams had proper authority to make the arrest and thus did not deprive Mr. Conley of any constitutional right. So long as the ordinance pursuant to which Officer Williams acted is enforceable, they say, the Airport Authority cannot be held liable under Monell.
 
 
 8
 Mr. Conley cites Sec. 55-50-351 of the Tennessee Code, which prohibits police officers[2] who are not state patrolmen from demanding the exhibition of a driver's license "unless the operator of the motor vehicle is then engaged in, or immediately prior to such demand, has been engaged in, a violation of any municipal ordinance or statute law of this state." The request for a driver's license was unlawful under Sec. 55-50-351, Mr. Conley's argument continues, because the regulations that establish the driving lanes do not qualify as "ordinances." Thus, he says, the request for his license was unlawful and the Airport Authority's policy of permitting officers to detain drivers under these circumstances is unconstitutional.
 
 
 9
 To succeed on a cause of action under Sec. 1983, however, a plaintiff must show, among other things, that he has been deprived of a right secured by the federal Constitution or by the laws of the United States. O'Brien v. City of Grand Rapids, 23 F.3d 990, 995-996 (6th Cir.1994). While the states are, of course, free to enact laws that are more protective of individual rights than the United States Constitution, a mere violation of such a state law will not establish a proper claim under Sec. 1983. Whether the stop of Mr. Conley and the request for his driver's license constituted an unlawful seizure for the purposes of his Sec. 1983 action is a question to be determined on the basis of the Fourth Amendment of the United States Constitution, and not on the basis of any state statute. Cooper v. California, 386 U.S. 58, 61 (1967); United States v. Tate, 821 F.2d 1328, 1330 (8th Cir.1987), cert. denied, 484 U.S. 1011 (1988). Cf. United States v. Wright, 16 F.3d 1429, 1434 (1994) cert. denied, 1994 WL 231582, 1994 U.S. LEXIS 5027 (June 27, 1994).
 
 
 10
 As a matter of federal law, a seizure does not occur within the meaning of the Fourth Amendment when a driver is stopped and asked to show his license. See United States v. Winfrey, 915 F.2d 212, 216 (6th Cir.1990), cert. denied, 498 U.S. 1039 (1991). Mr. Conley was "seized" within the meaning of the Fourth Amendment, however, when he was arrested and taken into police custody. The question that we must decide is whether the seizure was reasonable.
 
 
 11
 "The standard for arrest is probable cause, defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.' " Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). Mr. Conley admits that he drove outside the designated lanes, but he argues that a violation of the airport regulations establishing driving lanes is not a criminal offense because the regulations are not municipal ordinances.
 
 
 12
 Mr. Conley is certainly correct that probable cause cannot be based upon conduct that is not illegal. The defendants maintain, however, that failure to observe the lanes constitutes a violation of a municipal ordinance. The defendants rely on City of Memphis Code Sec. 3-81, which provides that all traffic regulations of general applicability shall apply to all areas of the airport and that the drives and parking areas in and about the airport shall have the status of city streets. Section 3-82 of the Code, moreover, empowers the Airport Authority to establish traffic regulations for all areas of the airport:
 
 
 13
 "For the purpose of the establishment of ... safety zones, one-way streets or drives and any and all other administrative and police regulations upon the airport, the airport authority shall have the powers delegated to the directors of fire and police and the director of public works by chapter 21 of this Code." Memphis Code Sec. 3-82.
 
 
 14
 Section 3-83(a) of the Code then specifically declares it to be unlawful for persons or vehicles to travel on areas of the airport not designated for their particular class of traffic:
 
 
 15
 "(a) No person shall travel on the airport other than on the roads, walks or places provided for the particular class of traffic." Memphis Code Sec. 3-83(a).
 
 
 16
 The designation of such "roads" or "places," say the defendants, has been made by the Airport Authority under the authority of Sec. 3-82.
 
 
 17
 Mr. Conley argues that Sec. 3-82, which grants the Airport Authority only the "powers delegated to the directors of fire and police and the director of public works," does not grant the Airport Authority the power to designate the driving lanes contemplated by Sec. 3-83 because the directors of fire and police would have no corresponding authority to establish city streets. But the only reasonable interpretation of these sections of the Memphis Code is that they permit the airport authority to designate driving lanes. Section 3-82 deals with the "establishment of ... safety zones, one-way streets or drives and all other ... regulations upon the airport," and Sec. 3-83 clearly contemplates that driving lanes will be established for particular classes of traffic. Moreover, the City of Memphis Charter has delegated to the Airport Authority the power to "exercise police powers and manage the property." Enforcement of regulations enacted pursuant to the delegation of power in Sec. 3-82 is undoubtedly within these police powers.
 
 
 18
 By its plain terms, section 3-83 applies to the airport apron on which Mr. Conley was traveling--and it is undisputed that Mr. Conley drove outside the area designated by the Authority for his particular class of traffic. The plaintiff may be correct that the regulations establishing lanes of traffic are not ordinances per se, but it is clear that Sec. 3-83 is an "ordinance" and that it incorporates the lane designations adopted by the Airport Authority under its delegation of authority in Sec. 3-82. It follows, therefore, that Mr. Conley's actions violated Sec. 3-83--an "ordinance" within the meaning of T.C.A. Sec. 55-50-351--and that the Airport Authority's policy of arresting drivers who have violated the ordinance is not unconstitutional.
 
 
 19
 The fact that he was charged only with breach of the peace and resisting arrest has no bearing on Mr. Conley's his claim that the arrest was unlawful. The officer had probable cause to believe Mr. Conley had just committed a criminal offense by driving outside the traffic lanes on the airport apron. Because it is undisputed that Mr. Conley drove outside the lanes, and because we find that this amounted to a violation of a municipal ordinance, the arrest was lawful.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 Mr. Conley's claim rests solely on an assertion that the stop, request for his driver's license, and subsequent arrest violated his constitutional rights; he does not base his claim on any allegation of excessive force by Officer Williams
 
 
 [2]
 It is undisputed that Airport Authority officers have the same authority as a police officer employed by the City of Memphis