5 A.3d 18 (2010)
In re L.M., Appellant.
No. 08-FS-644.
District of Columbia Court of Appeals.
Argued September 10, 2010.
Decided September 30, 2010.
Peter C. Ibe, Washington, DC, for appellant.
Janice V. Sheppard, with whom Peter J. Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Rosalyn Calbert Groce, Deputy Solicitor General, were on the brief, for appellee.
Before THOMPSON and OBERLY, Associate Judges, and FARRELL, Senior Judge.
FARRELL, Senior Judge:
Appellant was adjudged delinquent after she assaulted with a dangerous weapon (ADW shod foot) a girl, C.S., at school. She first argues that Judge Bush erred in not recusing herself from the factfinding hearing, D.C.Code § 16-2316 (2001), on defense request. The argument appears to have two parts. First, appellant cites D.C.Code § 16-2312(j) in arguing that the judge was compelled by statute to recuse herself "[u]pon objection" *19 because she had "conducted a detention or shelter care hearing" in the case.[1] It is true that the judge had conducted a prior shelter care hearing regarding L.M., indeed several, but in only oneheld on October 31, 2007, resulting in L.M.'s detention overnight until another judge could hold a formal "probable cause" hearing on the delinquency allegations, see D.C.Code § 16-2312(e)did the judge learn of facts related to the offense charged, and that was with the express consent of L.M.'s counsel.[2] Because appellant rejected the alternative of letting another judge decide the issue of probable cause justifying overnight detention, she cannot properly complain that by considering the factual allegations for that purpose, Judge Bush became subject to disqualification under § 16-2312(j). See Brown v. United States, 627 A.2d 499, 508 (D.C.1993) (defendant may not take one position at trial and contradictory one on appeal).
Of course, during the shelter care hearing (and at two later ones) the trial judge learned background information about L.M. that, appellant says, similarly required her statutory recusal from the factfinding hearing on objection. L.M. relies for this point on In re W.N.W., 343 A.2d 55 (D.C.1975), but it lends her no support. In that case, we found no obligation to recuse under § 16-2312(j) because, while the judge had learned adverse information about the appellant at a prior detention hearing on another charge, he "had no prior exposure to appellant's alleged role in the assault case [underlying the present delinquency petition]." Id. at 58 (emphasis added). Here, as we have seen, the judge's only prior exposure to facts about the charged ADW was with appellant's consent through counsel. Section 16-2312(j) is in pari materia with, and must be read in light of, §§ 16-2312(e) & (f), which state the judge's obligation, before ordering pre-factfinding detention or shelter care, to "hear evidence . . . to determine whether there is probable cause to believe the allegations in the [delinquency] petition are true." Section 16-2312(e). For § 16-2312(j)'s disqualification to operate, the section is thus naturally read as applying only to a judge who held a prior evidentiary hearing at which one issue was probable cause (or not) to believe that the allegations in the petition were true. Indeed, only that reading harmonizes the section with the "one family/one judge" policy embodied in D.C.Code § 11-1104(b)(2) (2001).[3] We reject appellant's *20 assertion of a broad statutory right to disqualify a judge whose past exposure to the child's background is unrelated to the issues to be decided at the factfinding hearing.
For largely the same reasons, appellant fares no better in arguing that Judge Bush should have recused herself from the factfinding hearing on ethical grounds. Our decision in W.N.W. confirmed "the presumption that a trial court will disregard all irrelevant matters in making its adjudications," 343 A.2d at 58, and our holding there is inconsistent with the notion that Judge Bush's impartiality reasonably could be questioned solely because she had learned information about, for example, L.M.'s two pregnancies and abortions. The judge's discussion with L.M. of her history took place in open court, see In re W.T.L., 656 A.2d 1123, 1127-28 (D.C.1995), and was in keeping with "recognition of [the juvenile process's] special role in the judicial scheme." W.N.W., 343 A.2d at 58 n. 2. If the additional information the judge had learned previously in W.N.W. did not compel recusal, as we held,[4] it surely did not do so here.
Appellant's remaining argument is that the government failed to prove that, by kicking the victim in the face with her shoe, she used a dangerous weapon, i.e., one "likely to produce death or great bodily injury by the use made of it." Dorsey v. United States, 902 A.2d 107, 111 (D.C. 2006). But the fact alone that appellant kicked C.S. repeatedly in the facewith enough force to cause a bleeding lip and swollen eyessufficed to allow the judge to find beyond a reasonable doubt that the shoe as used was likely to cause serious injury. See Arthur v. United States, 602 A.2d 174, 177-79 (D.C.1992). A kick to the face aims at a part of the body particularly vulnerable to injury from the blow, and when done with a shoe of any kind it compounds the danger of serious bodily harm.
Affirmed.
NOTES
[1] The statute states that "[u]pon objection of the child or his parent, guardian or custodian, a judge who conducted a detention or shelter care hearing shall not conduct a factfinding hearing on the [delinquency] petition."
[2] Court: . . . Mr. [Ibe, defense counsel], are you opposed to the court review of the Gerstein [v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)] proffer?.. . [I]f you're opposed to my review of the Gerstein, I'm just going to send it down to J15 and let them do the Gerstein [i.e., the overnight probable cause determination].
Mr. [Ibe]: Well, the court can review the Gerstein, but I'm opposed to step back."
Defense counsel well knew that his consent removed the judge's reading of the Gerstein proffer as a basis for the statutory disqualification, because in later invoking the statute he stated that he was "not focusing on the Gerstein," but instead on other, non-offense-related information the judge had learned about L.M.a matter we discuss in the text.
[3] Section 11-1104(b)(2)(A) states that "[a]n action or proceeding assigned pursuant to this subsection shall remain with the judge or magistrate judge in the Family Court . . . to whom [it] is assigned for the duration of the action or proceeding to the greatest extent practicable, feasible, and lawful"; and subsection (2)(B) adds that "[i]f an individual who is a party to an action . . . becomes a party to another action . . ., the individual's subsequent action . . . shall be assigned to the same judge or magistrate judge to the greatest extent practicable and feasible."
[4] Before the factfinding hearing, the judge there had heard testimony that W.N.W. had a "history of committing sexual" attacks and (in another recent charged case) was alleged to have committed sodomy and assault with a dangerous weapon. 343 A.2d at 57.