**Robert James KENNY**

v.

**WARDEN, RICHMOND CITY JAIL**
**Warden, Richmond City Lockup Director, Central State Hospital.**

Civ. A. No. 78–0424–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Aug. 23, 1979.

Robert James Kenny, pro se.

Burnett Miller, III, Asst. Atty. Gen. of Virginia, Richmond, Va., James W. Hopper, Richmond, Va., for defendants.

## MEMORANDUM

WARRINER, District Judge.

Robert James Kenny, proceeding *pro se,* brings this action alleging that he was illegally confined in the Richmond City Jail and in Central State Hospital. The factual allegations contained in the complaint are set forth in detail in the decision of the Fourth Circuit, *Kenny v. Richmond General District Court, Criminal Division,* 598 F.2d 614 (1979). Summarizing from the record, the plaintiff alleges that he was arrested in Richmond for disorderly conduct on 8 October 1977. He states that he spent one and one-half days in the Richmond City Lockup and then was transferred to the Richmond City Jail for a period of four or five days. Finally, the plaintiff claims he was confined in Central State Hospital for an additional week at the end of which he was released. According to Kenny, he was never tried on the charge of disorderly conduct, nor was he given any type of judicial hearing in regard to his continuing confinement.

The original complaint named the Richmond General District Court, Criminal Division as the defendant. This Court eventually dismissed the complaint after the plaintiff disregarded an order advising him that the Richmond General District Court was not a proper defendant. On appeal, the dismissal order was vacated and the case was remanded with directions to name particular parties as defendants. This action is thus now brought against the director of the Central State Hospital, the warden or jailer of the Richmond City Jail, and the warden or jailer of the Richmond City Lockup. It appears from the defendants' submissions that Sheriff Andrew Winston is the warden of both the City Jail and the City Lockup, the lockup being one unit of the City Jail.

The defendants have moved for summary judgment and accompany their motion with affidavits and supporting documents. By order of this Court dated 3 July 1979, the Court attempted to notify the plaintiff that he could, within 20 days, file any matter he wished to offer in rebuttal to the defendants' motion. The order was mailed to the address the plaintiff gave when he last communicated with the Court. However, the plaintiff apparently has changed addresses without leaving a forwarding address. In any event, the Court has not received additional information from the plaintiff and will proceed to a determination of this matter on the defendants' motion for summary judgment.

■ Turning first to the period of time the plaintiff spent at Central State Hospital, the Court finds ample evidence that his confinement was lawful. Both defendants have submitted copies of the record of the plaintiff's civil commitment hearing, which was held on 11 October 1977. At this proceeding, the plaintiff was represented by counsel. The Special Justice who conducted

the proceeding found that the plaintiff was so seriously mentally ill as to be unable to care for himself and further concluded that alternatives to involuntary admission were unsuitable. He therefore ordered that the plaintiff be admitted to Central State Hospital for a period not to exceed 180 days.

Section 37.1–68 of the Virginia Code provides that:

> Upon receipt of any order for admission of any allegedly mentally ill person, the director of the hospital shall immediately examine the admissions papers and, if they are found to be substantially in conformity with the law, he shall forthwith receive such person into the hospital.

The forms comprising the record of the plaintiff's proceeding were drafted by the Virginia Department of Mental Health and Mental Retardation to comply with the provisions of the Virginia Code governing involuntary commitment, 37.1 Va.Code Ann. §§ 37.1–67.3 (1950). Therefore, under State statutes, the Director of Central State Hospital lawfully accepted custody of and detained the plaintiff.

■ Furthermore, the Court finds that the plaintiff's confinement in Central State Hospital comports with the requirements of the Due Process Clause of the United States Constitution. In a closely analogous context, the Supreme Court has stated:

> At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed.

*Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972) (commitment of a criminal defendant based on incompetence to stand trial). In *McNeil v. Patuxent Institutional Director,* 407 U.S. 245, 92 S.Ct. 2083, 32 L.Ed.2d 719 (1972), decided shortly after *Jackson,* the Court applied this holding in the context of a commitment for observation, which appears to be the situation in the case at hand. The Court in *McNeil* found that the principles of due process limit "the permissible length of a commitment 'for observation.'" *Id.* at 250, 92 S.Ct. at 2087. The decision did not set a time limit for observation, but it applied without disapproving a Maryland statute which limited the observation period to six months. *Id.* Section 37.1–67.3 of the Virginia Code sets a maximum limit of 180 days detention based on an involuntary commitment order. In the present case, the commitment was for approximately one week. In view of the upper limits that have been recognized, the duration of the plaintiff's confinement certainly is not violative of the Due Process Clause.

■ A period of observation at the Central State Hospital was in fact recommended by Dr. John A. Mullaney, a psychiatrist who examined the plaintiff shortly after he arrived at the Richmond City Jail. Dr. Mullaney appeared at the Civil Commitment hearing and presented his recommendation to the Special Justice. The plaintiff was present at this proceeding and was represented by counsel. In addition to Dr. Mullaney, the Medical Administrator of the Richmond City Jail, Richard Eaton, appeared at the Commitment hearing. After their testimony, the Special Justice concluded that confinement at Central State Hospital was the least restrictive alternative in regard to the plaintiff. The Court finds that the procedural safeguards extended the plaintiff adequately assured the appropriateness of his confinement so as to comply with Due Process requirements, as set forth in *McNeil* and *Jackson.*

Because the Court concludes that the plaintiff was lawfully confined in Central State Hospital, the count charging the Director of Central State with unlawful detention will be dismissed. The count dealing with the plaintiff's confinement at Richmond City Jail must now be considered.

The plaintiff was brought to the Richmond City Jail after being arrested for disorderly conduct. The plaintiff has not alleged that his arrest was unsupported by probable cause. The actions of the arresting officers are therefore not in issue. There is some question as to when the arrest took place, however. The plaintiff claims he was arrested on the night of 8 October 1977. The defendant Sheriff Winston contends that the plaintiff was re-

ceived at the City Jail on 9 October 1977. This difference is not consequential.

At the longest, the plaintiff was held in the Richmond City Jail lockup overnight before he was examined by the nurse assigned to the Richmond City Jail on 9 October. The nurse was unable to complete the Medical Interview Sheet used in processing the arrestee because, as indicated by her notes, the plaintiff was "incoherent and physically in pain." Later that same day, the plaintiff was taken to the Medical College of Virginia South Emergency Room where his condition was evaluated by Dr. James A. Stewart. Dr. Stewart's medical report states that "he found [the plaintiff] to be disoriented and violent." The doctor ordered a psychiatric evaluation, which was conducted the following day by Dr. Mullaney. After conducting his examination, Dr. Mullaney recommended that the plaintiff be sent to Central State. The record in this case also indicates that Dr. Mullaney informed the General District Court for the City of Richmond on 10 October that he had examined the plaintiff and had found him to be psychotic and "evidently hallucinating." The Medical Administrator at the Richmond City Jail states in his sworn affidavit that when a communication of this nature is sent to the General District Court, "the normal procedure that is followed is to have any charges outstanding against an individual either dismissed or nol prossed inasmuch as the individual has been committed civilly to a mental institution." This information provides the context for the statement written at the top of Dr. Mullaney's communication, "Void—for civil commitment." The Court interprets this to mean that the disorderly conduct charge against the plaintiff was dropped after the General District Court received the doctor's report. This conclusion is consistent with the fact that the plaintiff was never tried for disorderly conduct, even though he was released from Central State Hospital after only one week.

██ To the Court, it is apparent from this long recitation of facts that the intervening question of the plaintiff's medical and physical health raised immediate medical concerns which justifiably took precedence over judicial concerns relating to probable cause. For the purposes of this analysis, and since there is no evidence that the plaintiff's arrest was pursuant to a warrant, the Court will assume that it was warrantless. The plaintiff should then, under ordinary circumstances, have been brought before a magistrate for an independent determination that probable cause existed for his detention, allowing only for "a brief period of detention to take the administrative steps incident to arrest." *Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975). In the present case, however, the plaintiff's medical problems became apparent to the staff at the Richmond City Jail at the time the plaintiff was being processed following his arrest. The staff responded in a commendable fashion by assuring that the plaintiff received the immediate medical attention he needed. The plaintiff was kept at the City Jail for two days while he was being examined by physicians at MCV and then apparently for several more days following the commitment proceeding. During this span of time the plaintiff's detention at the jail was supported, in order, first, by the arresting officer's on-the-scene assessment of probable cause; next, by the judgment of the medical staff at the City Jail that the plaintiff was in need of immediate medical attention; and, lastly, by the order in the civil commitment proceeding directing the Sheriff of the City of Richmond to make provision for the care of the plaintiff until he could be transferred to Central State Hospital. These bases justify the entire duration of the plaintiff's confinement at Richmond City Jail. Accordingly, the count charging unlawful detention at the City Jail will also be dismissed.