19 F.3d 1436
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
James SIMS, Plaintiff-Appellant,
v.
Alan LUCAS, et al., Defendants-Appellees.
 No. 92-1411.
 United States Court of Appeals, Seventh Circuit.
 Submitted Jan. 26, 1994.
Decided March 22, 1994.
 
 Before POSNER, Chief Judge, and RIPPLE and ILANA DIAMOND ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Plaintiff James Sims was convicted of rape. That conviction was affirmed by the Illinois Appellate Court in People v. Sims, 166 Ill.App.3d 289 (Ill.Ct.App.1987), cert. denied, 488 U.S. 844 (1988). Plaintiff filed a civil rights action, 42 U.S.C. Sec. 1983, and the district court entered summary judgment in favor of defendants.
 
 
 2
 For the reasons stated in the attached district court Memorandum Opinion and Order, the judgment of the district court is AFFIRMED.
 
 ATTACHMENT
 
 3
 IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
 
 DISTRICT OF ILLINOIS EASTERN DIVISION
 
 4
 James L. Sims, Plaintiff,
 
 
 5
 v
 
 
 6
 Alan Lucas, et al., Defendants.
 
 MEMORANDUM OPINION AND ORDER
 
 7
 LINDBERG, District Judge.
 
 
 8
 On August 19, 1991, this court entered a minute order stating:
 
 
 9
 Defendant's motion for summary judgment on plaintiff's excessive detention claim is granted on qualified immunity grounds. Defendant's motion for summary judgment on certain claims is granted in part and denied in part. Summary judgment is entered in favor of Michael Zefeldt on all claims. Summary judgment is entered in favor of all other defendants on all claims except for plaintiff's claim against them for the use of excessive force.
 
 
 10
 Subsequently, the excessive force claim was dismissed on plaintiff's motion. Plaintiff has appealed, and the court of appeals has remanded this case with directions to give the reasons for granting summary judgment, pursuant to that court's Circuit Rule 50.
 
 
 11
 Plaintiff was arrested, tried, and found guilty of rape in Illinois state court. He was sentenced as a habitual criminal to natural life imprisonment. Plaintiff appealed, and his conviction and sentence were affirmed by the Appellate Court of Illinois in a published opinion. People v. Sims, 166 IllApp3d 289, 519 NE2d 921 (1987). The claims in the case at bar arose out of plaintiff's arrest, trial, and conviction of rape, the facts of which are detailed in the Illinois Appellate Court's opinion.
 
 
 12
 Plaintiff's excessive detention claim is stated in his complaint as follows:
 
 
 13
 The Defendants, Lucas, Dorsch, Janka, Commander Pena and Commander Resa, in bad faith violated plaintiff's Fourth and Fourteenth Amendment Rights under the United States Constitution, in illegally arresting and detaining him from Sept. 20, 1983 until Sept. 23, in unreasonable post arrest detention more than 24 hours without a fair and reliable determination of a prompt affirmation of probable cause by a neutral detached judicial officer, while they sought to build a case against him knowing such violated plaintiff's clearly established statutory, constitutional and Civilly protected rights under the United States Constitution.
 
 
 14
 Defendants moved for summary judgment on this claim raising, inter alia, the defense of qualified immunity. In his memorandum in response to defendants' motion for summary judgment on this issue, plaintiff states that this detention lasted thirty to thirty-five hours.
 
 
 15
 In defining the limits of qualified immunity, the United States Supreme Court has stated:
 
 
 16
 [B]are allegations of malice should not suffice to subject government officials either to the costs of trial or the burdens of conducting discovery. We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known....
 
 
 17
 Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful....
 
 
 18
 By defining the limits of qualified immunity essentially in objective terms, we provide no license to lawless conduct. The public interest in deterrence of unlawful conduct and in compensation of victims remains protected by a test that focus on the objective legal reasonableness of an official's acts. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken "with independence and without fear of consequences." Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967).
 
 
 19
 Harlow v. Fitzgerald, 457 US 800, 817-19, 102 SCt 2727, 2738-39, 73 LEd2d 396 (1982).
 
 
 20
 At the time in question, the law with respect to the detention issue raised by plaintiff was established by the United Supreme Court's opinion in Gerstein v. Pugh, 420 US 103, 95 SCt 854, 43 LEd2d 54 (1975), in which the Court stated:
 
 
 21
 Whatever procedure a State may adopt, it must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest.
 
 
 22
 Gerstein v. Pugh, 420 US 103, 124-25, 95 SCt 854, 868-69, 43 LEd2d 54 (1975). The length of time which would satisfy the requirement that the probable cause determination be made "promptly after arrest" was undefined in Gerstein, and was not clarified until many years after the arrest in the case at bar. The clarification came in a 1991 United States Supreme Court opinion in which the Court said:
 
 
 23
 Unfortunately, as lower court decisions applying Gerstein have demonstrated, it is not enough to say that probable cause determinations must be "prompt." This vague standard simply has not provided sufficient guidance. Instead, it has led to a flurry of systemic challenges to city and county practices, putting federal judges in the role of making legislative judgments and overseeing local jailhouse operations....
 
 
 24
 Our task in this case is to articulate more clearly the boundaries of what is permissible under the Fourth Amendment. Although we hesitate to announce that the Constitution compels a specific time limit, it is important to provide some degree of certainty so that States and counties may establish procedures with confidence that they fall within constitutional bounds. Taking into account the competing interests articulated in Gerstein, we believe that a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of Gerstein. For this reason, such jurisdictions will be immune from systemic challenges.
 
 
 25
 This is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours. Such a hearing may nonetheless violate Gerstein if the arrested individual can prove that his or her probable cause determination was delayed unreasonably. Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake. In evaluating whether the delay in a particular case is unreasonable, however, courts must allow a substantial degree of flexibility. Courts cannot ignore the often unavoidable delays in transporting arrested persons from one facility to another, handling late-night bookings where no magistrate is readily available, obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest, and other practical realities.
 
 
 26
 Where an arrested individual does not receive a probable cause determination within 48 hours, the calculus changes. In such a case, the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstances.
 
 
 27
 County of Riverside v. McLaughlin, 111 SCt 1661, 1669-70 (1991).
 
 
 28
 Plaintiff was arrested, and was subsequently convicted of rape in state court. The conviction estops plaintiff from reasserting a lack of probable cause for the arrest, Currier v. Baldridge, 914 F2d 993, 996 (7th Cir.1990), so there was probable cause to arrest plaintiff. At the time of the arrest, under the Gerstein v. Pugh standard which the United States Supreme Court itself subsequently said was vague, see County of Riverside v. McLaughlin, 111 SCt 1661, 1669 (1991), it was not clearly established that a detention of 30 to 35 hours between an arrest for rape for which there was probable cause and the initial judicial probable cause determination was violative of plaintiff's constitutional rights. Consequently, this court granted defendants' motion for summary judgment on plaintiff's excessive detention claim on qualified immunity grounds.
 
 
 29
 Plaintiff's complaint alleged as claims that defendants took actions that:
 
 
 30
 [W]ere calculated or did, in fact, subject the plaintiff to a deprivation of his constitutional rights under the Fourth Amendment not to be arrested without probable cause or arrest warrant. And not to be subjected to unreasonable searches and seizures, and convicted based upon unconstitutionally seized evidence which the defendants submitted to be used at plaintiff's state trial to obtain plaintiff's state court conviction. And the defendant's submitted in his stat[e] trial proceedings, to deprive plaintiff of a fair and complete hearing on the illegal arrest, searches and seizures and plaintiff's Fourth Amendment Claims. Which subject plaintiff to a deprivation of his constitutional right to a fair hearing on his motion to suppress and quash illegally obtained and illegally seized evidence. And subjected plaintiff to a deprivation of his constitutional rights to a fair trial and due process of law, and not to be deprived of his liberty without due process and equal protection of the law, and were actions which were the direct and proximate cause of the injuries, damages, wrongs and loss of liberty and freedom from September 20, 1983 and for the duration of plaintiff's natural life in prison....
 
 
 31
 In addition to the above, plaintiff's complaint alleges several defendants used excessive force in arresting him and alleged the excessive detention claim which was the subject of the separate motion for summary judgment previously discussed.
 
 
 32
 Among the grounds on which defendants sought summary judgment on these claims was collateral estoppel. The United States Supreme Court has stated:
 
 
 33
 [N]othing in the language or legislative history of Sec. 1983 proves any congressional intent to deny binding effect to a state-court judgment or decision when the state court, acting within its proper jurisdiction, has given the parties a full and fair opportunity to litigate federal claims, and thereby has shown itself willing and able to protect federal rights. And nothing in the legislative history of Sec. 1983 reveals any purpose to afford less deference to judgments in state criminal proceedings than to those in state civil proceedings. There is, in short, no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court simply because the issue arose in a state proceeding in which he would rather not have been engaged at all.
 
 
 34
 Allen v. McCurry, 449 US 90, 103-04, 101 SCt 411, 419-20, 66 LEd2d 308 (1980). In Illinois:
 
 
 35
 [C]ollateral estoppel applies when: 1) the party against whom the estoppel is asserted was a party to the prior adjudication, 2) the issues which form the basis of the estoppel were actually litigated and decided on the merits in the prior suit, 3) the resolution of the particular issues was necessary to the court's judgment, and 4) those issues are identical to the issues raised in the subsequent suit. E.g., County of Cook v. MidCon Corp., 773 F.2d 892, 898 (7th Cir.1985); Raper v. Hazelett and Erdal, 114 Ill.App.3d 649, 70 Ill.Dec. 394, 449 N.E.2d 268 (1983).
 
 
 36
 Stokes v. City of Chicago, 744 FSupp 183, 185 (NDIll1990).
 
 
 37
 Plaintiff, the party against whom the estoppel is asserted, was a party to the prior adjudication. The Illinois Appellate Court stated the issues litigated in plaintiff's state court criminal proceedings as follows:
 
 
 38
 The attorneys for both defendants [i.e., plaintiff Sims and his codefendant in the state criminal case] contend that the State failed to prove an essential element of rape, i.e. penetration, and that the Habitual Criminal Statute is unconstitutional.
 
 
 39
 Defendant Sims' attorney also contends that the State failed to prove venue; Sims was denied his right to counsel when, after conviction and prior to sentencing and without notice to his attorney, his fingerprints were taken for the purpose of testing; and the natural life sentence was improper because the State failed to prove two prior convictions which contain the elements of a Class X felony.
 
 
 40
 ....
 
 
 41
 Sims pro se contends: his indictment is invalid; the evidence was insufficient as to rape, because he was found not guilty of deviate sexual assault, the verdicts being legally inconsistent; his motion to suppress and quash arrest was improperly denied; there was not probable cause for his arrest; his stop violated Terry v. Ohio; there was an unreasonable search and seizure in violation of the fourth amendment; the suppression of evidence denied him due process and equal protection; the State failed to list exculpatory material in response to his discovery request; the jury was improperly instructed; the State was improperly allowed to introduce evidence of other crimes; admission into evidence of the complainant's Red Cross blood donor's card was error; the admission into evidence of photo copies of his and [his codefendant's] driver's licenses was error; the prosecutor made improper and inflammatory remarks to the jury; there was improper use of peremptory challenges by the State; it was error to refuse to excuse one juror for cause; defendant was deprived in many ways of his sixth amendment right to counsel by destruction of, or failure to preserve, exculpatory evidence and by suppression of exculpatory evidence; a police officer testified falsely it was error to admit into evidence bloody pants and testimony regarding the blood type of the complainant; his right to obtain the complainant's sexual history was unduly restricted; he was improperly denied his right to represent himself; the simultaneous trials [of plaintiff Sims and his codefendant before separate juries] denied him due process and equal protection; and plain error was committed when the arresting officer was allowed to testify that he gave defendant his Miranda rights.
 
 
 42
 People v. Sims, 166 IllApp3d 289, 519 NE2d 921, 924 (1987). It is thus apparent that all of the claims plaintiff seeks to bring in the action at bar were raised as issues in the state criminal proceedings, and they were resolved against plaintiff. See People v. Sims, 166 IllApp3d 289, 519 NE2d 921, 928-38 (1987). So, the issues which form the basis of the estoppel were actually litigated and decided on the merits in the prior case and are identical to the issues raised in the case at bar. Finally, an examination of the Illinois Appellate Court opinion shows that the resolution of the particular issues was necessary to the issues raised in this suit. People v. Sims, 166 IllApp3d 289, 519 NE2d 921, 928-38 (1987); Stokes v. City of Chicago, 744 FSupp 183, 185 (NDIll1990).
 
 
 43
 Plaintiff claims in conclusory fashion that he was denied an opportunity to fairly litigate the issues in the state court proceedings, and so contends that collateral estoppel should not be applied to bar the claims he raises in this Sec. 1983 action. Plaintiff does not show any specific way in which he was denied an opportunity to litigate the issues in the state court and the nature of his allegations of wrongdoing are not such as would make for court proceedings at which plaintiff would not have been able to litigate all of his issues fully and fairly. There being no evidence to support plaintiff's claim that he could not fairly litigate the issues he seeks to raise in this action, plaintiff's mere unsupported assertion that he was denied the opportunity to fairly litigate will not preclude the application of collateral estoppel in this case.
 
 
 44
 Thus, the claims alleged in plaintiff's complaint, except the excessive detention claim from which defendants were held to be qualifiedly immune and the excessive force claim which plaintiff withdrew, are barred by collateral estoppel. Accordingly, defendants' motion for summary judgment on certain claims was granted, with the exception of plaintiff's claim of the use of excessive force.
 
 
 45
 ---------------
 
 
 
 1 On November 22, 1993, this court issued an opinion in this case, ordering a limited remand with directions that the district court provide reasons for granting summary judgment. Sims v. Lucas, 9 F.3d 1293 (7th Cir.1993). The district court entered such an order on December 22, 1993. We have also considered the supplemental brief filed by defendants; the pro se plaintiff has not submitted such a brief.