OPINION
{¶ 1} Appellant, Troy R. Gregorino, appeals the judgment entered by the Portage County Municipal Court, Kent Division. Gregorino was convicted of one count of disorderly conduct.
 {¶ 2} On May 4, 1970, four students were shot and killed by members of the Ohio National Guard at Kent State University ("K.S.U."). The students were part of a demonstration protesting the United States involvement in the Vietnam War. Since the events of May 4, 1970, annual commemorations on the anniversary of the event are held on the K.S.U. campus.
 {¶ 3} On May 4, 2003, the annual commemoration was held. At this time, the United States was involved in a war with Iraq. Many anti-war demonstrators attended the May 4th events to protest the war with Iraq. Gregorino was part of a group that was protesting the war.
 {¶ 4} Following the commemoration, the anti-war group left Manchester Field, the site of the tribute. The group marched through the K.S.U. campus. The movement of the group was being tracked by a police helicopter, as well as undercover officers within the group. Eventually, the group headed north toward State Route 59 ("Main Street"). Main Street is a four to five lane street that borders the K.S.U. campus on the North.
 {¶ 5} Prior to the group reaching Main Street, the police ordered a section of Main Street closed. Main Street was blocked with police cars. As the group approached Main Street, the police were giving warnings over a public address system from a police van. These announcements warned the protestors to stay off the street and informed them they would be subject to arrest if they went onto the street.
 {¶ 6} Despite the warnings, some members of the group, including Gregorino, walked onto Main Street. At this time, the group was chanting, beating on makeshift drums, and marching on the street. A videotape of this portion of the march was introduced at trial, and it shows the group protesting in a nonviolent manner. The group proceeded west on Main Street towards Lincoln Street, where they were met with a police barricade of several officers. Kent Police Chief Jim Peach testified that the barricade was set up to prohibit the group from reaching downtown Kent. Gregorino was targeted as a leader of the group, and Chief Peach ordered that he be arrested. When Gregorino was arrested, he and other members of the group had retreated from Main Street back onto the K.S.U. campus.
 {¶ 7} Deanna Cickelli testified that she was visiting friends on May 4, 2003. These friends lived on Summit Street, near State Route 43, in Kent, Ohio. In the afternoon, she went to pick up a pizza from East of Chicago. East of Chicago is a pizzeria located on Main Street on the east side of Kent. On her return trip, Cickelli planned on traveling west on Main Street to return to her friends' house. However, she was forced to turn around when she saw that the street was closed. She had to take an alternate route to the residence. She testified that these events were annoying and inconvenient.
 {¶ 8} Gregorino was charged with disorderly conduct in violation of R.C. 2917.11(A)(4), a fourth-degree misdemeanor. Gregorino pled not guilty to this charge. In addition, he filed a motion to dismiss the charge, claiming the statute was unconstitutional, both facially and as applied. The trial court overruled this motion.
 {¶ 9} A jury trial was held. Following the state's case-in-chief, Gregorino moved for acquittal pursuant to Crim.R. 29. In addition, he renewed his motion to dismiss, claiming the statute was unconstitutional as applied to him. At the close of the evidence, Gregorino renewed his Crim.R. 29 motion. The trial court denied all of these motions. Thereafter, the jury found Gregorino guilty of disorderly conduct. He was sentenced to serve thirty days in jail. However, this sentence was suspended on the condition that Gregorino perform sixteen hours of community service. The sentence was stayed pending appeal.
 {¶ 10} Gregorino raises two assignments of error. His first assignment of error is:
 {¶ 11} "The trial court erred and/or abused its discretion, all to the prejudice of appellant, in overruling appellant's motion for acquittal pursuant to [Crim.R. 29]."
 {¶ 12} A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction.[1]
When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[2]
 {¶ 13} Gregorino was only charged with disorderly conduct, in violation of R.C. 2917.11(A)(4), which provides:
 {¶ 14} "(A) No person shall recklessly cause an inconvenience, annoyance, or alarm to another by doing any of the following:
 {¶ 15} "* * *
 {¶ 16} "(4) Hindering or preventing the movement of persons on a public street, road, highway, or right-of-way, or to, from, within, or upon public or private property, so as to interfere with the rights of others, and by any act that serves no lawful and reasonable purpose of the offender[.]"
 {¶ 17} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."[3]
 {¶ 18} Gregorino asserts that Cickelli was not sufficiently annoyed or inconvenienced. We disagree. Cickelli testified that she had to take an alternative route on her return trip from the pizza parlor. While this annoyance and inconvenience may have been minor, the state met its burden by providing sufficient evidence from which the jury could have found this element of the offense proven beyond a reasonable doubt.
 {¶ 19} Gregorino contends that the state failed to provide sufficient evidence that he was not serving a lawful or reasonable purpose when he was in the street. Again, we disagree. As stated by the Eighth Appellate District, "[t]he offender's conscientious belief in the importance of the subject about which he demonstrates does not provide him with a lawful privilege to obstruct the roadway."[4] In addition, the court held, "[o]ne who voluntarily lies in the street with knowledge that he will thereby divert traffic and without a legal privilege to do so is not acting in a `lawful' manner."[5]
 {¶ 20} No matter how noble Gregorino believed his cause to be, his First Amendment right to free speech did not provide him with a lawful reason to be in the street.
 {¶ 21} Finally, we address the issue of whether the state provided sufficient evidence to show that Gregorino impeded traffic. For the reasons that follow, we hold the state did not meet its burden on this element.
 {¶ 22} The undisputed evidence at trial established the police closed Main Street before Gregorino and the other demonstrators reached the roadway. By closing the street, it was the police, not Gregorino, who annoyed and inconvenienced Cickelli.
 {¶ 23} In overruling Gregorino's motion for acquittal, the trial court ruled that Main Street "was closed as a result of the paraders, and Mr. Gregorino was one of those persons."
 {¶ 24} It appears that the state and the trial court are applying a proximate cause analysis to the case, i.e., but for the actions of Gregorino, the police would not have closed Main Street. In its appellate brief, the state allocates a significant portion of its argument to assert the police were justified in closing Main Street. We agree. We commend the actions of the police in ensuring the safety of the protestors and the general public. In its closing argument, the state claimed the defense suggested "what the Kent Police Department did in closing down the street was an absolute mistake, that they should have just let that traffic keep on going and if the protestors and the cars got there at the same time, well, we'll just clean up the bodies and we'll deal with it then." The state suggests there were only two options: (1) keeping the street open with the potential of numerous injuries or (2) closing the street. We agree. However, by closing the street to avoid injuries, the police took away the element of the offense of disorderly conduct under R.C.2917.11(A)(4). The sound actions of the police do not excuse the state from its burden of showing that Gregorino was impeding traffic.
 {¶ 25} The following hypothetical demonstrates this point. If eighty thousand people attend a sporting event, when the game ends, they will all leave the stadium at approximately the same time. Obviously, there is a potential that the pedestrians may be on the same streets as motor vehicle traffic. In response, the police may choose to close some of the side streets in proximity to the stadium. If thousands of pedestrians then walk on those closed streets, are they guilty of disorderly conduct because they are impeding traffic? Of course not. The police made a conscious decision to close the streets in the interest of public safety. Thus, the police, not the pedestrians, are impeding traffic, albeit for just cause. The same situation occurred in the case at bar. The police closed Main Street in the interest of public safety. Gregorino, similar to the pedestrians in the hypothetical, made a decision to walk on the street after the police made a decision to close it.
 {¶ 26} The state notes that Gregorino entered the street after repeated warnings from the police over the public address system. If proven, Gregorino's actions may have been sufficient to constitute a violation of R.C. 2921.331(A), failure to comply with order or signal of police officer. However, Gregorino was not charged with this offense.
 {¶ 27} As an aside, we note that the police had sufficient probable cause to arrest Gregorino. In this case, the facts were sufficient to warrant a prudent person in believing that he had committed a criminal offense.[6]
 {¶ 28} Finally, our holding in this matter should in no way be construed as disapproval for the way the police addressed this situation, including their decision to close the street. In fact, we applaud the police for their professionalism in the actions they took to ensure the safety of everyone involved.
 {¶ 29} Even when viewed in a light most favorable to the prosecution, the evidence presented by the state was insufficient for the jury to find, beyond a reasonable doubt, that Gregorino impeded traffic.
 {¶ 30} Gregorino's first assignment of error has merit.
 {¶ 31} Gregorino's second assignment of error is:
 {¶ 32} "The trial court erred and/or abused its discretion, all to the prejudice of appellant, in overruling appellant's motion to dismiss."
 {¶ 33} In his motion to dismiss, Gregorino challenged the constitutionality of R.C. 2917.11(A)(4), both facially and as applied.
 {¶ 34} Gregorino's claims that the statute is unconstitutional on its face. The Supreme Court of Ohio has held that "[t]he constitutionality of R.C. 2917.11 must be authoritatively construed in light of the facts and the circumstances surrounding a case involving speech."[7] It is important to note that the Hoffman decision focused on R.C.2917.11(A)(2), which prohibits causing inconvenience, annoyance, or alarm through gestures, language, or noise. This section directly concerns speech. Accordingly, the Supreme Court of Ohio cautioned against the unconstitutional application of the statute. The court did not find any concerns with the initial language of R.C. 2917.11(A).
 {¶ 35} In this case, Gregorino argues that R.C. 2917.11(A)(4) is overbroad. While he acknowledges it is intended to control conduct, he claims it may be used to control speech. We disagree. In State v. Sullivan, this court rejected a claim that R.C.2917.11(A)(4) was unconstitutional.[8] Therein, this court quoted the following passage from the Supreme Court of the United States:
 {¶ 36} "`The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy. The control of travel on the streets is a clear example of governmental responsibility to insure this necessary order. A restriction in that relation, designed to promote the public convenience in the interest of all, and not susceptible to abuses of discriminatory application, cannot be disregarded by the attempted exercise of some civil right which, in other circumstances, would be entitled to protection. One would not be justified in ignoring the familiar red light because this was thought to be a means of social protest. Nor could one, contrary to traffic regulations, insist upon a street meeting in the middle of Times Square at the rush hour as a form of freedom of speech or assembly. Governmental authorities have the duty and responsibility to keep their streets open and available for movement. A group of demonstrators could not insist upon the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations.'"[9]
 {¶ 37} The Eight Appellate District has quoted similar language from the United States Supreme Court.[10] Simply stated, while individuals have a right to freedom of speech and expression, the government can place reasonable restrictions on the time, place, and manner of the exercise of those rights. Certainly, prohibiting individuals from standing in a roadway is an example of such reasonable restriction. R.C. 2917.11(A)(4) is not unconstitutionally overbroad.
 {¶ 38} We have found merit in Gregorino's first assignment of error and, thus, are reversing his conviction. Therefore, his argument that R.C. 2917.11 is unconstitutional as applied to him is moot.[11]
 {¶ 39} Part of Gregorino's second assignment of error is without merit, the remainder of this assignment of error is moot.
 {¶ 40} The judgment of the trial court is reversed. This matter is remanded to the trial court for the court to enter a judgment of acquittal.
Christley, J., concurs, Grendell, J., dissents with Dissenting Opinion.
[1] Crim.R. 29(A).
[2] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979),443 U.S. 307.
[3] R.C. 2901.22(C).
[4] Cleveland v. Egeland (1986), 26 Ohio App.3d 83, 86.
[5] Id., citing R.C. 4511.74.
[6] See State v. Tibbetts (2001), 92 Ohio St.3d 146, 153, quoting Gerstein v. Pugh (1975), 420 U.S. 103, 111-112, quotingBeck v. Ohio (1964), 379 U.S. 89, 91.
[7] State v. Hoffman (1979), 57 Ohio St.2d 129, paragraph two of the syllabus.
[8] State v. Sullivan (Sept. 30, 1982), 11th Dist. No. 1159, 1982 Ohio App. LEXIS 12063, at *3.
[9] Id. at *4-5, quoting Cox v. Louisiana (1965),379 U.S. 536, 554.
[10] See Cleveland v. Egeland, 26 Ohio App.3d at 86-87, quoting Cox v. New Hampshire (1941), 312 U.S. 569, 574.
[11] Akron v. Medford (July 18, 2001), 9th Dist. No. 20352, 2001 Ohio App. LEXIS 3211, at *12, citing App.R. 12(A)(1)(c).