IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 7, 2016

## COURTNEY BISHOP v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 08-07886        James M. Lammey, Judge
_____

**No. W2015-02064-CCA-R3-PC  -  Filed November 15, 2016**
_____

The Petitioner, Courtney Bishop, appeals the Shelby County Criminal Court's denial of his petition for post-conviction relief from his convictions of first degree felony murder and attempted aggravated robbery and resulting effective sentence of life plus three years. On appeal, the Petitioner contends that he received the ineffective assistance of counsel. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

Genna M. Lutz, Memphis, Tennessee, for the appellant, Courtney Bishop.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Samuel David Winnig and Tyler Parks, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

On the night of August 19, 2008, Marlon McKay, a marijuana dealer, decided to rob Maurice Taylor, another marijuana dealer. State v. Bishop, 431 S.W.3d 22, 31 (2014), cert. denied, 135 S. Ct. 120 (2014). McKay explained his plan to the Petitioner, and they drove to Taylor's home. Id. About 11:00 p.m., Taylor, who was at home with his older brother, received a telephone call and went outside. Id. Taylor's brother heard a gunshot and found Taylor lying on his back in the yard. Id. Taylor died of a gunshot wound to the chest shortly thereafter. Id. Small plastic bags were on the ground near the

victim's body, and $1,163.75 in cash was in his wallet. Id. at 32. Investigators spoke with neighbors, who described seeing a light-colored sedan with tinted windows that had been circling the neighborhood at the time of the shooting. Id. Information obtained from the victim's cellular telephone then led investigators to McKay's girlfriend and her silver 1997 Mercury Cougar, and the police arrested McKay. Id. McKay told them that he "got cold feet" during the robbery and was walking back to the car when the Petitioner shot the victim. Id.

On August 22, 2008, the police took the Petitioner to the Memphis Criminal Justice Center and obtained from a magistrate a "'48 hour hold' authorization—a procedure that involves a finding of probable cause to arrest, along with an assumption that if a suspect's alibi checks out, the suspect will be released within 48 hours." Id. During the Petitioner's second day in custody, he admitted to participating in the robbery but claimed the victim was "tussling" with him, which caused the gun to "go off." Id.

In December 2008, the Shelby County Grand Jury indicted the Petitioner for first degree felony murder and attempted aggravated robbery. Id. at 33. The Petitioner moved to suppress his confession, claiming that it was the fruit of an illegal arrest because McKay's statement implicating him did not provide the police with probable cause for his arrest. Id. The trial court denied the motion, and the Petitioner proceeded to trial in April 2010. The Petitioner testified that he shot the victim accidentally, but the jury convicted him as charged. Id. at 33-34. The trial court sentenced him to consecutive sentences of life for the first degree murder felony conviction and three years for the attempted aggravated robbery conviction. Id. at 34.

On direct appeal of his convictions, this court concluded that the trial court erred by denying the Petitioner's motion to suppress his statement and that the State failed to prove the corpus delicti of aggravated robbery because the only evidence introduced at trial that the Petitioner attempted to rob the victim was his own uncorroborated confession. Id. This court also sua sponte determined, "at least in part," that the Petitioner's forty-eight-hour hold resulted in a violation under Gerstein v. Pugh, 420 U.S. 103 (1975). Id. at 43. Accordingly, this court dismissed the Petitioner's conviction for attempted aggravated robbery and remanded the case for a new trial on the modified charge of second degree murder. Id. at 34. The State appealed to our supreme court, and that court reversed, finding that the police had probable cause to arrest the Petitioner and that the Petitioner's confession did not require corroboration because the Petitioner repeated his confession under oath at trial. Id. Regarding the Gerstein violation, the supreme court held that this court erred by not addressing the issue as plain error, which would have resulted in a conclusion that the Petitioner was not entitled to plain error relief. Id. at 45. Thus, our supreme court reversed the judgment of this court and reinstated the Petitioner's convictions. Id. at 63.

The United States Supreme Court denied the Petitioner's petition for writ of certiorari, and he filed a timely petition for post-conviction relief, alleging that he received the ineffective assistance of counsel because trial counsel failed to argue that his confession was coerced, that trial counsel failed to advise him properly about the ramifications of testifying, and that trial and appellate counsel failed to argue that his arrest was illegal because his forty-eight-hour hold was for an illegal purpose or furthering an investigation. The post-conviction court appointed counsel, and counsel filed an amended petition, additionally alleging that trial counsel was ineffective because he failed to investigate the case adequately in order to prepare for trial and failed to file "an adequate and effective" appeal for the Petitioner.

At the evidentiary hearing, trial counsel testified that he was self-employed and took over the case from the public defender. He said that he and the Petitioner met "quite a bit" and "got along" and that he tried to find any witnesses the Petitioner asked him to find. Counsel said he could not remember if he employed an investigator for the case but "would be shocked if [he] didn't" because hiring an investigator in a first degree murder case was his "normal course of action." The Petitioner had given a confession, so the defense's strategy was to "embrace[]" the confession. Counsel told the Petitioner that in his opinion, the Petitioner's "only chance" was to testify, and the Petitioner agreed with that strategy. Counsel said the Petitioner was young, shy, and soft-spoken and that the Petitioner's testimony "was about as good as you could get." After the Petitioner testified, counsel requested that the trial court instruct the jury on duress, and the trial court did so. During closing arguments, counsel argued that "if there weren't any Marlon McKay the victim would still be alive." Another attorney represented the Petitioner on the direct appeal of his convictions, but trial counsel "was there for consultation" and "helped him with some of it."

On cross-examination, trial counsel testified that he had been practicing law for eighteen years and had handled seventy to one hundred jury trials, including fifty to seventy murder trials. The Petitioner's testimony was "going to be the key" for the defense because there "wasn't any way around [the Petitioner's confession] other than stepping up and explaining what he said, why he said it." Counsel said he advised the Petitioner to testify because the Petitioner "was the only one who could do that." Counsel stated that the case "went as well as it could go" but that in hindsight, he might have picked a different jury. Otherwise, he could not think of anything he would have done differently.

The Petitioner testified that trial counsel met with him three or four times in jail. The Petitioner received discovery and reviewed it with counsel but never saw an investigator. He did not ask counsel to locate any witnesses because the only witness was

- 3 -

his co-defendant. The Petitioner said that if he had been trying to kill the victim, he would have taken the victim's money. However, he did not get anything from the attempted robbery. Counsel told the Petitioner that his best defense was to testify, and the Petitioner agreed. Counsel also told the Petitioner to be truthful, and the Petitioner "was truthful when [he] got up there." The Petitioner said that counsel mostly "had it down pat" but that counsel "could of came on more strong in how he performed." Counsel also should have raised a Gerstein issue regarding the Petitioner's forty-eight-hour hold.

At the conclusion of the hearing, the post-conviction court found that trial counsel "did everything he could" to help the Petitioner. The court stated that the Petitioner also had an excellent attorney for the direct appeal of his convictions, noting that the Petitioner "won at the Court of Criminal Appeals level." The court said that trial counsel "could not pull a rabbit out of the hat and somehow convince a jury that the statement of admission was not a good one" but that it thought the trial court did charge duress because of the possibility that the older, more-influential McKay "somehow dominated [the Petitioner] and forced him to do this deed." Finally, the court stated that it did not "see any weaknesses in the case" and denied the petition for post-conviction relief.

## II. Analysis

The Petitioner contends that he received the ineffective assistance of counsel because trial counsel failed to maintain adequate contact with him, meeting with him only three or four times in jail; failed to investigate the case or hire an investigator; and failed to prepare him to testify when the possible punishment was life in prison. The Petitioner also contends that trial counsel was ineffective for failing to raise a Gerstein issue in his motion for new trial, which resulted in our supreme court's concluding that the issue had been waived. The State argues that the Petitioner is not entitled to relief. We agree with the State.

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are

entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Generally, [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component. Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

Turning to the instant case, the Petitioner contends that counsel was ineffective because he failed to maintain adequate contact with him, failed to investigate the case or hire an investigator, and failed to prepare him to testify when the possible punishment was life in prison. However, the Petitioner testified that counsel met with him in jail, that he received discovery, that he reviewed discovery with counsel, and that counsel mostly had the case "down pat." Counsel advised the Petitioner to testify and to testify truthfully, and the Petitioner agreed with that strategy. The Petitioner has not explained what more counsel should have done and has not offered any explanation as to how he was prejudiced by counsel's alleged deficiencies.

The Petitioner also contends that counsel was ineffective for failing to raise a Gerstein issue in his motion for new trial, which resulted in our supreme court's concluding that the issue had been waived. However, the supreme court addressed the issue as plain error. Specifically, the court stated as follows:

When a person is arrested without a warrant, the law requires the arresting authorities to take him or her before a magistrate to "seek a prompt judicial determination of probable cause." Gerstein v. Pugh, 420 U.S. at 125 . . . .

While a delay of less than forty-eight hours is presumptively reasonable, a delay beyond forty-eight hours requires the State to prove that "a bona fide emergency or other extraordinary circumstance" caused the delay. County of Riverside v. McLaughlin, 500 U.S. 44, 56-57 (1991). Even so, a delay shorter than forty-eight hours may still be considered unreasonable, and hence unconstitutional, if the delay is "for the purpose of gathering additional evidence to justify the arrest" or if the delay is "motivated by ill will against the arrested individual, or delay for delay's sake." County of Riverside v. McLaughlin, 500 U.S. at 56.

. . . .

Mr. Bishop did not raise the Gerstein issue in the trial court. He did not brief or argue this issue to the Court of Criminal Appeals. Neither he nor the State identified the Gerstein question as an issue in the Tenn. R. App. P. 11 application or in the answer to the Tenn. R. App. P. 11 application. Finally, Mr. Bishop did not identify Gerstein as an independent issue in the brief he filed in this Court, even though he cited Gerstein and County of Riverside v. McLaughlin, 500 U.S. 44 (1991), in the argument section of his brief. Based on this record, we can reach no conclusion other than that Mr. Bishop waived his opportunity to take issue with the alleged delay in providing him a Gerstein hearing by failing to raise it and preserve it in the proper manner.

. . . .

Despite Mr. Bishop's obvious waiver of the Gerstein issue, the Court of Criminal Appeals decided, on its own motion and without requesting additional briefing or argument, to base its decision, at least in part, on Gerstein. Without employing a plain error analysis, the Court of

Criminal Appeals concluded that Mr. Bishop's arrest had been for an illegal purpose because the police detained Mr. Bishop after he was arrested "for the purpose of gathering additional evidence to justify the arrest." State v. [Courtney] Bishop, [No. W2010-01207-CCA-R3-CD,] 2012 WL 938969, at *8 [Tenn. Crim. App. at Jackson, Mar. 14, 2012].

. . . .

Had Mr. Bishop asserted plain error with regard to his claim that the police improperly detained him following his arrest for the purpose of gathering additional evidence, he would have had the burden of demonstrating that he was entitled to relief. State v. Jordan, 325 S.W.3d [1,] 58 [(Tenn. 2001)]. Based on this record, we have concluded that a plain error argument would have run aground because Mr. Bishop would not have been able to demonstrate that considering the error was necessary to do substantial justice.

Mr. Bishop was arrested with probable cause. He subsequently confessed three times to shooting Maurice Taylor. On one of those occasions he was testifying under oath before a jury. Under these circumstances, it is difficult to perceive how substantial justice requires the reversal of his conviction for first-degree felony murder in perpetration of an attempted aggravated robbery.

Based on this record, we have determined that the Court of Criminal Appeals erred by overlooking Mr. Bishop's waiver of the Gerstein issue and by failing to employ the plain error analysis when it addressed this issue. Had the Court of Criminal Appeals employed the plain error analysis, it would have concluded, as we have, that Mr. Bishop is not entitled to relief based on this issue.

Bishop, 431 S.W.3d 42-45 (footnotes omitted). Thus, despite the waiver, our supreme court concluded that the police had probable cause to arrest the Petitioner and that he was not entitled to plain error relief. Because the Petitioner's Gerstein claim did not rise to the level of plain error on direct appeal, he cannot establish prejudice in a post-conviction proceeding. Charles Owens v. State, No. M2009-00558-CCA-R3-PC, 2010 WL

1462529, at *7 (Nashville, Apr. 13, 2010), perm. to appeal denied, (Tenn. Sept. 22, 2010). Therefore, the post-conviction court properly denied the petition.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE